MARTIN GERBER, Appellant, *v.* JACOB GRABEL, Appellee.

APPEAL FROM MADISON.

An action for obstructing air and light to windows in a house, will be sustained in this State.

In such an action, it is not necessary to aver a right by prescription, in the use of the windows obstructed.

Twenty years' uninterrupted and unquestioned enjoyment of lights, constitutes them ancient lights; in the enjoyment of which the owner will be protected.

THE declaration averred, in the first count, that the plaintiff, before and at the time of the committing of the grievance thereinafter mentioned, and still is, lawfully possessed of a certain

messuage or dwelling-house, with the appurtenances, situate and being on, etc., in the town of Edwardsville, etc., in which, during all the time, etc., there were, and still of right ought to be, divers, to wit: two windows, through which the light and air, during all the time aforesaid ought to have entered, and still ought to enter, etc. Yet that the defendant, well knowing the premises, etc., contriving, etc., and to annoy him, etc., theretofore, to wit: on the first day of January, 1854, wrongfully and injuriously erected and raised, etc., a certain wall and building near to and against the said windows, and wrongfully, etc., kept the same erected for a long space of time, to wit: from the day and year aforesaid, hitherto. By means whereof, etc.

The other pleadings and proceedings are described in the opinion of the Court.

This cause was heard before UNDERWOOD, Judge, at October special term, 1854, of the Madison Circuit Court.

J. and D. GILLESPIE, for Appellant.

L. TRUMBULL, for Appellee.

SCATES, J. This is an action on the case for obstructing and excluding the light and air from passing through the windows into the plaintiff's dwelling-house, situated on lot 127, in Edwardsville, by the erection of a wall and building, by the defendant, by which the house is rendered close, uncomfortable, unwholesome, and unfit for habitation, and plaintiff is greatly annoyed and incommoded in the use, possession and enjoyment. The second count is for continuing this obstruction; and the third count is general, for obstructing and excluding light and air, through the windows, without specifying the means.

Plea, not guilty; and verdict for plaintiff for $45. On motion, the court arrested the judgment, and gave judgment in favor of the defendant for costs.

There are two questions: one on the sufficiency of the pleadings, and the other on the existence of the right, under the common law of this State.

The declaration does not prescribe for ancient lights, but declares generally that plaintiff is possessed of the house, and has, and ought to, enjoy a right to the light and air through these windows. It is objected that this is insufficient.

In most of the early declarations for disturbance of lights, and for nuisances, a prescription was alleged. But at an early day this ancient rule of prescribing was relaxed, and by the modern rule, this declaration is sufficient to admit proofs of the right, whether it arise upon a prescription, by contract, or otherwise, by estoppel, etc. 1 Chit. Pl. 379, 381, 2; 4 Crok. Car. 575;

*Sands* v. *Trefuses, Cox* v. *Matthews,* 1 Ventr. 237, ibid. 274; *St. Johns* v. *Moody, Penwarden* v. *Ching,* 1 Mood. and Malk. R. 400 (22 Eng. C. L. R. 341), Yelv. R. 216; *Hughes* v. *Keme,* note 1; *Coryton* v. *Lithebye,* 2 Saund. R. 113, 114, and notes; *Yard* v. *Ford,* ibid. 175; *Story* v. *Adin,* 12 Mass. R. 159.

The old rule seemed to recognize a distinction between an owner of the land, and a mere trespasser; and that a prescription should be averred as to the former, while an allegation of possession in the plaintiff of the property injured, was good as to the latter, Yelv. R. 216, note 1; but no distinction is recognized in the modern rule. And we deem the general averments of possession and right, sufficient to admit proof of the true claim and interest. Legislation has conformed to these improvements in the rules of pleading, in the old possessory ejectment, now converted into a real action of title.

But in personal actions for injuries to the realty, this general mode of stating the right, does not extend to the plea or subsequent pleadings, for the party must show and prescribe in the *que estate,* 1 Chit. Pl. 382, until released by Stat. 2 and 3 Wm. IV. Cap. 71, to which I shall have occasion more particularly to refer, in noticing the remaining question as to the right in this case.

On the second point, we premise, by saying that the " common law of England, so far as the same is applicable and of a general nature," and acts of Parliament made in aid of, and to supply defects of the common law, which are of a general nature, and not local to that kingdom, passed prior to 4 James I, with certain exceptions, are in force here. (Rev. Stat. 337, Sec. 1.) We see no reason for the inapplicability of rules in relation to air and light in houses, and that air should be as wholesome and agreeable here as there. If the elements themselves are as essential to life and enjoyment, the rules of law that secure that enjoyment, and determine the right, equally apply. The only conceivable difference is in relation to the quantity of vacant land, and the number of unimproved city and town lots, which it is supposed may be affected and depreciated in value, by the acquisition of these easements by prescription on boundary lines, which would prevent owners of vacant lands and lots from building and improving upon them. But I do not regard the danger from *our* common law as being so great, in this respect, as is apprehended. Nor is the question so full of danger or difficulty, as would seem, from reading the American decisions, in applying the common law to our circumstances. This will appear by an examination of some of them.

In New York, the common law, down to the year 1775, is adopted. The statute of limitations of 21 James I., Cap. 16,

fixed a limit upon rights of entry, and of actions for land. The English courts had begun to indulge in presumptions in favor of incorporeal easements in the land, such as way, common, ancient lights, etc., in analogy to the time fixed for barring the remedy. So short a prescription appeared to some courts hazardous to the ownership of vacant property, and they have manifested a disposition to cut the knot they could not untie, by denying its applicability, or by distinguishing between those which are tangible and intangible in the possession and use. See *Parker* v. *Foote*, 19 Wend. R. 312 ; *Myers* v. *Gemmel*, 10 Barb. S. C. R. 538 ; *Pierre* v. *Fenald*, 26 Maine R. 438 ; *Hoy* v. *Sterrett*, 2 Watts R. 331.

The English courts took no such distinction, but applied the presumption to all alike, according to the time that would bar an action to recover against it. *Yard* v. *Ford*, 2 Saund. R. 174, note 2, and 175a, to end of note, with authorities cited. The twenty years' possession was not a bar, but was left to the jury, and was deemed sufficient to warrant a verdict, if unrebutted. Ibid. ; 1 Bos. and Pull. 402 ; 2 East. 153 ; 2 Bos. and Pull. 206.

So stood the presumption in favor of use and enjoyment until the prescriptive act of 2 and 3 William IV., Cap. 71, which made these presumptions absolute on certain conditions ; and, by section 3, the use of lights, for twenty years without interruption, conferred an absolute right, unless it had been by consent. 1 Chit. Pl. 713, Appendix to edition, 1847.

The courts in Massachusetts, without adopting expressly the broad English rule, seemed to sanction it ; but the legislature provided that a party, by filing a notice in the office of the register of deeds, and serving the other with a copy of it, might defeat the effects of such enjoyment upon his land. 12 Mass. R. 220 ; 7 Met. R. 403-4 ; *Story* v. *Oelin*, 12 Mass. R. 159.

But the courts in New York differ as to the existence of the English rule in that State. In *Mahan* v. *Brown*, 13 Wend. R. 263, the court recognized the rule very fully ; and so does the vice-chancellor, in *Banks* v. *The American Tract Society*, 4 Sandf. Ch. R. 464.

The court evidently leaned to this view of it, though the question was waived in *Palmer* v. *Wetmore*, 2 Sandf. S. C. R. 317.

In New Jersey the doctrine is very fully adopted, in *Robeson et al.* v. *Pettinger*, 1 Green Ch. R. 61 ; and so in Kentucky. *Manier* v. *Meyers et al.*, 4 B. Monr. R. 520-1 ; and S. Caro. R. 1 Dudley L. and Eq. 131, *McCready* v. *Thompson.*

Most of these cases that adopt or recognize the English rule, apply it with its prescriptive presumption of twenty years, in analogy to the statute of limitations.

But such is not the rule of the common law of Illinois, as I shall proceed to show. The older decisions upon these incorporeal rights, based them upon a common law prescription, from the use and enjoyment for a time whereof the memory of man runneth not to the contrary, or as fixed, in many cases, as far back as the reign of Richard I. (Chit. Pl., Appen. 712). Upon such a prescription as this, it was held, a man could not erect a house upon his own soil, so near my house as to stop my ancient lights; it would be a nuisance, for light is of great comfort and profit to men; and the same, if his house throw the rain upon my house. 2 Rol. Abrid. 140-41, cites Bland's case, 9 Cok. R. 58. Baten's case, 5 Cok. R. 53, decided James I., has the same doctrine; and Alched's case, same year, 5 Cok. 57. *Hughes* v. *Keme*, Yelv. R. 216, 9 James I., sanctions the same doctrine, by custom of London; yet he may build his house higher upon the old foundation, even if it put out my lights. Same case. Anonymous. Comyn R. 273, 4 Geo. I.

*Palmer* v. *Fleischer* or *Fletcher*, 1 Leving. R. 122, in Keeble R., side 65, top 553, by name of *Palmer* v. *Flessier*, ruled the same, as to ancient lights; but this distinction is noted, that if A build upon his own soil, and afterwards sell the house, he cannot build on his land to obstruct the light, nor can a purchaser of the land of A, although the land be sold first.

As this case is reported in T. Raymond, 87, this ruling is said to have been by Twisden and Windham, Justices, and per Keelyng, contra.

The case of *Bowry* v. *Pope*, 1 Leond. 168, 31 Elizabeth, and by the name of *Bury* v. *Pope*, in Cro. Eliz. 118, in 30 Elizabeth, shows very clearly the common law at the accession of James I. It was there held that, if one build on his line, and put windows overlooking his neighbor's land, and enjoy the windows thirty or forty years, still the adjoining proprietor may build and stop them up, for it was his folly to build so near. The case is vouched upon authorities. Temp. Edw. I.; 1 Leving. 122, 162; 1 Ventr. 237; 2 Vern. 644; Ld. Raym. 392; Salk. 459; 1 Rol. Abrid. 107; 9 Cok. 58b; 11 Hen. IV. 47, and others. Whether the references sustain the ruling, I have not verified, but the decision itself I receive as good evidence of what the common law was at the date of our adoption of it. The statute of limitations of 21 James I. we did not adopt, although the legislature passed a very similar one. While we highly respect the learned decisions of English courts adopting an analagous rule to their statute of limitations, we must bow to the authority of these older rulings, with liberty to say, that a twenty years' prescription for the easement of light and air is not applicable to the circumstances of this

State, unsettled and unimproved as it is. Although Justice Wilmot, in *Daniel* v. *North*, 11 East. 372, in 1761, could say that it was settled law (3 Kent. Com. 448), yet it cannot be traced back to a period beyond the 21 James I.; and Bronson, J., in *Parker* v. *Foote*, says it was not sanctioned in Westminster Hall until 1786.

There is apparent sound reason in the distinction taken by the courts, in (19 Wend. R. 309; 10 Barb. S. C. R. 537, and 26 Maine R. 436,) relation to this class of easements, where the enjoyment is lawful to the party, and without injury or invasion of the possession or use, of another's rights, and which gives no ground for complaint or remonstrance; it is, if I may be allowed the expression, intangible of his rights in its use, possession and enjoyment; and that class of easements, which require for the possession, use and enjoyment, a tangible invasion of another's possession and rights, such as common, way, etc., of which he may complain, and for which he may bring his action. I have no property in a prospect, nor has another in the light and air that passes across his land. He may, when he please, deprive me of the prospect, nor should my enjoyment of the other, in which he has no property, and cannot therefore complain, deprive him of the best use of his land itself, by any facilities of shortening the period of its maturity into a right, by presumptions against his innocent inaction. On the contrary, when I go upon his land by myself or my cattle, claiming a way or a common, or he pollutes the air of my house by noisome and unwholesome stenches, there is such a mutual, tangible invasion and injury, as gives cause of complaint and action. To suffer this use of such an easement, with a knowledge of it, and without express consent, may well raise a presumption of a grant or existing right from silence and inaction. And a much shorter period of enjoyment would satisfy the mind, and subserve the ends of justice. So we find the courts of this State applying the modern rules of presumption to the cases of highways. 1 Gilm. R. 4, 10; 15 Ill. R. 240, 262.

This judicial prescription, now statutory in England, by 2 and 3 William IV, raising a presumption of right, because the remedy is barred, may, in the progress of the law, have been very judiciously applied to the protection, security, and maturing rights to those easements, which, in their use and enjoyment, require a tangible, physical possession and occupation of the land, as in right of way, or a sensible, physical deterioration of its use and enjoyment by the owner, as in nuisances by offensive trades. For here would be a palpable, sensible invasion of the owner's rights, and an injury to him. But in relation to these, the presumption is not indulged unless the ease-

ment is used under a claim or assertion of right, and with the knowledge and acquiescence of the owner of the land. 3 Kent Com. 448; 19 Wend. R. 312.

Under these circumstances the presumption has a sensible basis to operate upon, in the forbearance of the injured party to vindicate his rights by entry or action, and his acquiescence in the known claim and appropriation of his rights, by another. For the public good, and for the sake of peace and quieting and settling controversies, we might follow the precedents by an analagous prescription under our statute of limitations, presuming a grant.

But no part of this reasoning will apply to an incorporeal servitude of light and air. It was well said in *Bury* v. *Pope,* that it is his folly to build his house and put his windows upon another's line, and 30 or 40 years' use shall not debar the other from building on his line adjoining. This folly is no invasion of, or injury to, the adjoining proprietor's property or rights, while his property lies vacant. There is no wrong to complain of, or injury to redress, as in the class of easements referred to. It cannot therefore become an easement or servitude upon the land, until it begins to operate upon the owner's right of obstructing the light and air. *When* then does this *servitude begin?* At the precise period when man's memory of its beginning is lost. Such was the common law of our adoption, and its adaptation is as well suited, in all things, to us, as to any people or country.

But in relation to this *servitude* upon land, by a judicial prescription of twenty or other number of years, in analogy to the statute of limitations, I am unable to say so much. Or that it has any adaptation at all to a country in the infancy of its improvements, containing hundreds of embryo cities and villages and thousands of vacant lots, waiting the demands of future population, for dwellings and other buildings for habitation and business. The folly of so building on the line, if this short presumption is to prevail, would only be exceeded by the follies necessary to defend against it. If the adjoining proprietor build a wall for simple obstruction, it will be set down to malice or wantonness as was charged in *Mahan* v. *Brown,* 13 Wend. 263. If he prematurely build to improve, he may get his losses for his pains, and credit them to account of his legal necessities; if he gives notice and protests, these evidences may be lost. Yet something must be done, to prevent his neighbor's folly ripening into a right, which may destroy half the value of his own land.

There is a class of implied covenants or agreements, which operate by way of estoppel, that stand upon a different founda-

tion from prescription in a strict sense. As where one build and afterward grant the house, neither he nor his vendee of the land may stop the window of that house. This distinction was taken as early as *Palmer* v. *Fletcher*, 1 Leving R. 122, and the case of *Story* v. *Odin*, 12 Mass. 159, and *Roswell* v. *Peyor*, 1 Mod. 116, went upon that ground; so in *Robeson et al.* v. *Pettinger*, 1 Green Ch. R. 57; see also notes to *Thurston* v. *Hancock et al.*, 12 Mass. 227–8; but this even is denied as applicable to New York in *Myers* v. *Gemmel*, 10 Barb. S. C. R. 537.

Applying the doctrine as we have laid it down, and still the court erred in arresting the judgment in this case. It would seem that the judgment in arrest must have been predicated upon the insufficiency of the declaration in not averring the lights to be ancient, and a prescription in the estate, or that the common law was inapplicable. The evidence formed no part of the record on this motion, nor is it preserved in the record. But upon the pleading, we are of opinion, the plaintiff might have proved a prescription under our common law as we have here laid it down; or he might have proved an express grant; or he might have proved such circumstances, from which a grant or estoppel would be presumed, without regard to length of use. We must presume the proofs warranted the verdict, and there is nothing in the verdict contrary to law.

The judgment is therefore reversed, and the cause remanded for judgment upon the verdict.

*Judgment reversed.*

---

Separate opinion of CATON, J. As I understand the first section of chapter sixty-two, Rev. Stat., it adopts the common law of England as understood and administered in Westminster Hall, at the time that provision was originally adopted in this State, and the British statutes passed in aid of the common law, prior to the fourth year of James the First, except as provided in that section. It was admitted, that by the well settled rule of the common law, as it has been understood and administered by the English courts for many years past, twenty years' uninterrupted and unquestioned enjoyment of lights, constitutes them ancient lights, in the enjoyment of which the owner shall be protected. There is nothing in the character of this rule of law which makes it local to that kingdom, or which adapts it more to that form of government, than to ours. That is the law which our legislature has declared " shall be the rule of decision, and shall be considered as of full force, until repealed by legislative authority." There is no pretense that it has ever been so repealed, and hence I feel myself controlled by it. It

must be my rule of decision. That the public good would be promoted by its repeal, I may admit, but the constitution has not made me a judge of that. I think the plaintiff was entitled to judgment on the verdict.

TREAT, C. J., dissented.