## ALFRED GUEST *et al.*

### *v.*

## WILLIAM H. REYNOLDS.

1. NUISANCE—*case lies for.* If a party erect anything offensive so near the house of another, that it becomes useless thereby, an action on the case will lie. But it does not lie if a man build a house and makes a cellar upon his own land, whereby a house newly built on adjoining premises falls down, nor if, by such building, he stops lights newly made in the house of another, though the lights have continued for thirty or forty years. Some positive right must be invaded before an action will lie against one for use of his own property.

2. SAME—*obstructing light and views by fence on adjoining premises.* In the absence of an adverse right by prescription, grant or otherwise, the owner has the right to erect a fence or building upon his own land, which will have the effect to deprive the owner of adjacent premises of light and air to his house, and obstruct his view from the same, and such erection, unless made of offensive material, will not be a nuisance for which any action lies.

3. PLEADING AND EVIDENCE—*recovery must be had on the ground alleged in declaration.* If the plaintiff in his declaration places his right to recover upon the ground of an obstruction by which air and light are prevented from coming into his house, and thereby rendering his rooms dark, unwholesome and uninhabitable, he will be required to prove his case as laid, and show his right to the passage of air and light over the defendant's land, and its interruption. It will not be competent for him on the trial to prove an injury from a nuisance, as that the obstruction

was made of offensive and filthy material, which created an unwhole-
some atmosphere in his house, as that is a different and independent
cause of action.

4. COMMON LAW—*as to ancient lights not sanctioned in this State.* The
English doctrine of prescriptive right, permitting limitations to win-
dow lights and views and prospects, not being adapted to the condition
of affairs in this country, is not in force in this State.

APPEAL from the Circuit Court of Cook county; the
Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. SLEEPER & WHITON, for the appellants.

Mr. A. GARRISON, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the
Court:

This was an action on the case, brought to the circuit court
of Cook county, to recover damages for an alleged obstruc-
tion, by defendants, of the free use of the light and air pass-
ing laterally over the premises of defendants to plaintiff's
premises.

The declaration contains two counts, in substance, as fol-
lows : Plaintiff, after averring his residence on a particular lot,
73 South Sangamon street, in Chicago, in a house having doors,
windows and views of the street, through which light, air and
views had and ought to enter into the dwelling house, and the
views should not have been obstructed, and the use of the
light and air and views should not have been obstructed, and
ought to be used by plaintiff and his family, for the whole-
some use and occupancy thereof, avers : Yet, the said
defendants, well knowing the premises, but contriving, wrong-
fully and unjustly intending to injure the plaintiff and his
family, and to deprive them of the use of said doors, win-
dows and views, and to incommode him in the use and
enjoyment thereof, and to annoy plaintiff in his use and
possession and enjoyment of said premises, on, etc., wrong-
fully and injuriously caused and erected and raised a high

board fence, and caused to be erected, constructed and raised on the north part of said lot and dwelling house and lot, and adjoining thereto, a high board obstruction. The obstruction was made and constructed next to the north line of the house and lot, No. 73 South Sangamon street. It was made upon the south line of an alley next north of said house and lot, and close adjoining, and was so made and constructed, and is now standing, and in such close proximity that it hides the original fences. It nowhere protects the alley, and it is so raised and constructed, and of such height made at certain places in its construction, and so near to the windows, that it wrongfully and injuriously darkens the said dwelling house, obstructs the light to said windows, and is so made as to obstruct the view to said street, and in fact is so constructed, wrongfully and injuriously, as aforesaid, as to interfere with the use of, and the light and air and views from said dwelling house, and thereby renders said dwelling house of but little use to plaintiff and his family; and defendants have wrongfully and injuriously kept and continued said high board fence obstruction, etc., by them erected, as aforesaid, for a long space of time, to-wit, etc.; and the same is now continued, by means of which premises, the said dwelling house, with its appurtenances, are greatly darkened and injured, and they continued darkened and injured, and the light, air and views were and are hindered and prevented from coming into, and through the said windows, into said dwelling house, and the same hath thereby been rendered, and is close, uncomfortable, unwholesome and measurably unfit for habitation, and plaintiff and his family have thereby been, and still are, greatly annoyed and incommoded in the use, possession and enjoyment of said dwelling house and lot, with the appurtenances, to-wit, etc., to the damage, etc.

The second count, omitting the formal and introductory parts, avers: Yet, the said defendants, well knowing the premises, but continuing, etc., and intending to injure and

prejudice plaintiff and to deprive him of the use, benefit and enjoyment of the said windows, and to annoy and incommode him in the use, possession and enjoyment of said dwelling house, with the appurtenances, heretofore, to-wit, etc., (with a continuando), wrongfully, maliciously, wilfully and injuriously greatly darkened said windows, and hindered and prevented the light and air from coming and entering into, into and through said windows into said dwelling house and premises, and the same have thereby been rendered and are uncomfortable, unwholesome and unfit for habitation, and the plaintiff thereby has been and is greatly annoyed and incommoded in the use, possession and enjoyment of said dwelling house and premises, with the appurtenances, to his damage, etc.   The plea was, not guilty.

Under instructions from the court, the plaintiff had a verdict for eight hundred and thirty-eight dollars, a portion of which was remitted and judgment rendered for five hundred dollars.

To reverse this judgment defendants appeal.

We have copied, literally, the counts of the declaration, in order that the precise nature of the action may be seen and understood.

Appellee claims that the *gravamen* of the action is not for obstructing light and air and views, but it is for erecting an unsightly fence and of offensive materials.   The logic of the *narr.* certainly is, that plaintiff having the right to use the light and air and views, he has been deprived of the same by the erection of the fence, and by which erection his dwelling has been darkened, rendered unwholesome and unfit for habitation.   The latter is alleged as a consequence of the erection of the fence, and the right to build the fence is denied, because of plaintiff's right to have free course for light and air and an unobstructed view from his windows.   The *gravamen* of the action most clearly is, the obstruction of light, air and view, the rest being consequences, merely, of the obstruction.   It is not alleged, the materials which composed

31—68TH ILL.

the obstruction—the fence—were of an offensive nature, or that the air, in passing through or over the fence, became charged with offensive matter. The averment simply is, by erecting a fence the passage of light and air has been obstructed, by which the dwelling has been darkened, rendered unwholesome and unfit for habitation.

In this view of the nature of the action, the first question to be determined is, were defendant's lots, on the south boundary of which they erected this fence, servient lots ; in other words, had the plaintiff any right to the passage of light and air laterally over defendant's lots, to plaintiff's doors and windows, and to an unobstructed view of an adjacent street? If he had, whence does he derive it ? This is for him to show, and he has not shown it. He shows no right by prescription, by use for twenty years, if such use could be available, and no grant from any one. The owner of the premises erected the dwelling house occupied by plaintiff within two feet of the south line of defendant's premises. We have been referred to no law forbidding defendants from erecting a fence on the line of their own land. Admit the erection does darken the rooms of his neighbor—that it does render them close and uncomfortable, and annoy and incommode him, the defendants have only exercised a right belonging to them, by building the fence.

This is not a case of ancient lights. The plaintiff insists it is for a nuisance, arising out of a violation of the maxim, "*sic utere tuo ut alienam non lædas.*" It is not denied, that, by the common law, an action on the case lies for a nuisance to the habitation or estate of another, many instances of which are readily found in the books ; and among the many hundred, one is now before us, in 10 Ad. & Ellis, 590, *Hight* v. *Thomas*, 37 E. C. L. Rep. 182, and is germane to this case. That was an action for annoying plaintiff in the enjoyment of his house, by causing offensive smells to arise near to, in, and about the house. The defendant pleaded the enjoyment, as of right, for twenty years of a mixen (compost heap or

dunghill) on his land contiguous and near to plaintiff's house, whereby, during all that time, offensive smells necessarily and unavoidably arose from the said mixen. This plea was traversed, and there was a verdict for the defendant. In the King's Bench the plea was held bad, and the plaintiff entitled to judgment, as it did not show a right to cause offensive smells in the plaintiff's premises, nor that any smells had in fact been used to pass beyond the limits of defendant's own house.

The law unquestionably is, if a man erect anything offensive so near the house of another, that it becomes useless thereby, case lies, as, a lime kiln, a dye house, a tallow furnace, a privy, a brew house, a tan vat, a smelting house, and the like. But it does not lie if a man builds a house and makes cellars on his soil, whereby a house newly built on the adjoining soil falls down, so, if by such building he stops lights newly made in the house of another, though the lights have continued for thirty or forty years.

In all the cases where it was held the action would lie, a positive right was invaded. If this was a case of ancient lights, the maxim would apply. But plaintiff having established no right, he can not claim to be injured or damnified, as no right is infringed,—legally speaking, there is no injury or damage. The defendants can not be charged with so using their own property as to injure another. By the fence the plaintiff has been deprived of the use of that which did not belong to him, for light and air are not the subjects of property beyond the moment of actual occupancy. *Mahan* v. *Brown*, 13 Wend. 261 ; *Parker* v. *Foote*, 19 ib. 309.

That the defendants had the right to build a fence fifty feet high, on their own land, or a high wall which should have the effect to deprive plaintiff of light and air, and obstruct his view, the plaintiff himself showing no prescriptive or other adverse right, is settled by authority.

The case of *Gerber* v. *Grabel*, 16 Ill. 217, is referred to on this question. There, the declaration did not prescribe for

484        GUEST *et al.* *v.* REYNOLDS.       [Sept. T.

Opinion of the Court.

ancient lights, but declared generally, as in this case, that plaintiff was possessed of the house, and ought to enjoy a right to the light and air through the windows. The court held the declaration was sufficient to admit proof of the right, whether it arises upon a prescription, by contract, or otherwise by estoppel.

The English doctrine was fully examined and admitted by one of the judges, Mr. Justice SCATES delivering the opinion, that the rule in England was the presumptive prescription of twenty years, applied in analogy to the Statute of Limitations. But, he said, such was not the rule of the common law of this State, and, discussing the older authorities, from Rolle's Abridgment, through Coke, down to Croke's Eliz. to the accession of James I, the learned judge reached the conclusion, that a prescription of twenty years for the easement of light and air, was not applicable to the circumstances of this State, unsettled and unimproved as it is; that the doctrine can not be traced further back than the twenty-first year of James I. He then treats of the distinction between easements which require the actual use of the property of another, such as commons, a way, etc., and proceeds : One has no property in a prospect, nor in the light and air that pass across his land. He may, when he pleases, deprive another of the prospect; but in regard to easements of the other description, suffering the use of it, with a knowledge of it by him out of whose estate it is claimed, and without his express consent, might well raise a presumption of a grant or existing right from silence and inaction, and a much shorter period would be satisfactory and subserve the ends of justice. But, he says, after an extended argument of this branch of the subject, no part of this reasoning will appply to an incorporeal servitude of light and air. It was well said in *Bury* v. *Pope*, Croke's Eliz. 118, that it was his folly to build his house, and put his windows upon another's line, and thirty or forty years' use shall not debar the other from building on his line adjoining. This

folly is no invasion of, or injury to, the adjoining propri-
etor's property or right, while his property lies vacant. There
is no wrong to complain of, or injury to redress, as in the
class of easements referred to. It can not, therefore, become
an easement or servitude upon the land, until it begins to
operate upon the owner's right of obstructing the light and
air. He then asks this question: When does this servitude
begin? The answer is, at the precise period when man's
memory of its beginning is lost. Such, he insists, was the
common law of our adoption, and its adaptation is as well
suited in all things to us, as to any people or country.

As we understand this opinion, the right to the free pas-
sage of light and air must be established for a length of time
whereof the memory of man runneth not to the contrary,
that is, from time immemorial; and this was the common
law, as understood prior to the accession of James I.

Another distinguished judge, Mr. Justice CATON, whose
ability and great legal knowledge have never been questioned,
understood the first section of chapter 62, Rev. Stat., adopted
the common law of England as administered in Westminister
Hall at the time the provision was originally adopted in this
State, and the British statutes in aid of the common law
prior to the fourth year of James I, except as provided in that
section; and as it was admitted that, by the well settled rule
of the common law, as it has been understood and adminis-
tered by the English courts for many years past, twenty years
uninterrupted and unquestioned enjoyment of lights consti-
tutes them ancient lights, in the enjoyment of which the
owner shall be protected.

TREAT, Chief Justice, dissented, but filed no opinion, by
which dissent we infer he did not agree with either of his
associates. This is the only case in this court we have been
referred to touching this subject, and from it, it will be seen
the law has not been authoritatively declared, enough only
appearing in the record to dispose of the case then pending.

But, be the law twenty years, or time immemorial, in which to prescribe, it can not avail the plaintiff in this action, as he established neither. The declaration in the case is drawn from a precedent in 2 Ch. Pl. 769, with some slight variations, which is there prescribed in an action on the case for obstructing ancient windows.

An action on the case for a nuisance lies not, if one builds a house or other structure whereby the prospect of another is interrupted. 9 Coke, 58. It does not lie for a reasonable use of one's right, though it be to the annoyance of another. So, if, by such building, he stop lights newly made in the house of another, though the lights have continued for thirty or forty years. Com. Dig. 429.

The doctrine of the common law, as found in Washburn on Easements and Servitudes, is. that an adjacent owner may deprive his neighbor of the light coming laterally over his land, by the erection of a wall on his own land, within the period of prescription, although he does it for the mere purpose of darkening his neighbor's windows. p. 491.

In *Chandler* v. *Thompson*, 3 Campbell, 82, LE BLANC, J., said: Although an action for opening a window to disturb the plaintiff's privacy was to be read of in the books, he had never known such an action to be maintained, and he had heard it said by EYRE, Ch. J., that such an action did not lie, and that the only remedy was, to build on the adjoining land opposite the offensive window.

The complaint in this declaration is, for erecting an obstruction, by which light and air were prevented from coming into plaintiff's house, rendering the rooms dark, unwholesome and uninhabitable. The point is, that defendants had a right to erect the fence, which was the obstruction alleged. The plaintiff, showing no right to the free passage of light and air, must submit to this erection, in the absence of any allegation that the fence was made of unfit materials, the odor from which was of a noxious nature, which, penetrating the house of plaintiff, rendered it unwholesome. To entitle

him to claim damages for the erection of a fence, by which his dwelling was darkened and made unwholesome, he must show a prescriptive right to the use of the light and air, which he does not pretend. He can not make one case in his declaration, and another and different case by his proofs. He declares against the defendants that he is possessed of a dwelling house, with doors and windows, to and through which light and air ought to come freely, but you, the defendants, have obstructed their free passage, by which my house is darkened, rendered unwholesome and unfit for habitation. This is his whole case, as he states it in the declaration. We submit, it is not competent for him, on the trial, to prove that the materials out of which the fence was made were filthy and unfit, or that they created an atmosphere in the house which was noxious, for that is an independent cause of action.

Now, on the question of prescription. As it is an open question in this court, we are inclined to adopt the views held and so well expressed by the Supreme Court of the State of New York in *Parker & Edgarton* v. *Foote,* 19 Wend. *supra.*

In commenting on the doctrine as received by the British courts, the court say, they tell us a man may build on the extremity of his own land, and that he may *lawfully* have windows looking out upon the land of his neighbor. The court say, the reason why he may lawfully have such windows, should be, because he does his neighbor no wrong; and yet, some how or other, by the exercise of a lawful right in his own land for twenty years, he acquires a beneficial interest in the land of his neighbor. The original proprietor is still seized of the fee, with the privilege of paying taxes and assessments; but the right to build on the land, without which city and village lots are of little or no value, has been destroyed by a lawful window. How much land can thus be rendered useless to the owner, remains yet to be settled.

And the court further say, there is no principle upon which the modern English doctrine on the subject of lights can be supported. It is an anomaly in the law. It may do well enough in England, and has been sanctioned, with some qualification, by act of Parliament, but it can not be applied to the growing cities and villages of this country without working the most mischievous consequences, and has never been deemed a part of our law.

In *Myers* v. *Gemmel*, 10 Barb. 537, this case is approved.

In 3 Kent's Com. 573, it is said, the English doctrine is not much relished in this country, owing to the rapid changes and improvements in our cities and villages. A prescriptive right, springing up under the narrow limitation in the English law, to prevent obstructions to window lights and views and prospects, or, on the other hand, to protect a house or garden from being looked in upon by a neighbor, would affect essentially the value of vacant lots, or of lots with low and back buildings upon them. To the same effect is Washburn on Easements and Servitudes, 497.

We are disposed to concur in this view, and to hold it absurd to say that a man, by the exercise of rights over his own property for twenty years, can thereby acquire a title in the property of another. Such a doctrine is not applicable to our growing cities and villages, and was not the doctrine of the common law, as expounded in Westminister Hall prior to the fourth year of the reign of James I.

These views render it unnecessary to consider the instructions given in this case, as it is readily seen some of them were not applicable.

As we understand the declaration, there is no cause of action stated in it to entitle the plaintiff to a recovery, and we must reverse the judgment. The judgment is therefore reversed, and the cause remanded.

*Judgment reversed.*