NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241035-U

NO. 4-24-1035

IN THE APPELLATE COURT

FILED
April 17, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| TERRANCE A. QUINN, JOANN M. QUINN, STEPHEN L. GROB, and NIKI J. GROB, | ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellees, | ) | Woodford County |
| v. | ) | No. 21CH14 |
| MASON HELMS and KAYLA UZELAC, | ) | |
| Defendants-Appellants. | ) ) ) ) | Honorable Michael L. Stroh, Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court erred in granting summary judgment in favor of plaintiffs, and defendants are entitled to summary judgment in their favor on count II.

¶ 2     Defendants Mason Helms and Kayla Uzelac appeal from the circuit court's order of summary judgment in favor of plaintiffs Terrance A. Quinn, Joann M. Quinn, Stephen L. Grob, and Niki J. Grob on their two-count complaint. Plaintiffs sought an injunction compelling the removal of a fence on defendants' property on the basis that it violated restrictive covenants (count I) and was a private nuisance (count II). For the reasons that follow, we reverse the entry of summary judgment on both counts, enter summary judgment in favor of defendants on count II, and remand for further proceedings on count I.

¶ 3                         I. BACKGROUND

¶ 4    In the early 1990s, Donald Cremeens and John Ginder developed the Elizabeth Pointe Subdivision in Germantown Hills, Illinois. The plat filed with the county recorder for the subdivision contained restrictive covenants for those who built within the planned development. The restrictions, among other things, detailed a prohibition against fences being constructed along or within a lot line "except in connection with a swimming pool" with "written approval of the Developer." Another provision specifically required that "[a]ll swimming pools must be enclosed by fencing approved by the developer," though chain link fencing was specifically prohibited. The covenants provided that if plans and a request for approval were submitted, they were deemed automatically approved if the developer failed to respond within 20 days. Any subdivision resident was empowered to bring a suit against anyone violating any of the restrictions and was also entitled to recover costs and fees in any successful suit. The relevant restrictive covenants on appeal are as follows:

"ENCLOSURES OR FENCES: No enclosure or fence shall be constructed along any lot line or within any lot in the Subdivision, except in connection with a swimming pool as herein provided for, without written approval of the Developer."

"SWIMMING POOLS: All swimming pools must be enclosed by fencing approved by the Developer and shall, in all respects, comply with all applicable statutes, ordinances and building codes pertaining thereto."

"ANIMAL PENS OR KENNELS: No animal pens or kennels shall be erected or maintained in the Subdivision without the written approval of the Developer. *In any case, no chain link fences shall be permitted.*" (Emphasis added.)

"APPROVAL/DISAPPROVAL OF PLANS AND SPECIFICATIONS: If the Developer fails to give written approval or disapproval of such plans and

specifications within twenty (20) days after same have been received by the Developer, the plans and specifications shall be deemed approved, provided, however, no building or other structure shall be erected which violates any of the terms of this Declaration of Restrictions or the specifications, easements and setback lines on the Plat of the Subdivision."

¶ 5 Plaintiffs Stephen and Niki Grob constructed a residence in the subdivision in 1998. The residence includes a 241-foot-long, 6-foot-wide driveway. Plaintiffs Terrance and Joann Quinn own a residence in the same subdivision, directly North of the Grobs' property, that they purchased in 2003. The Quinns' driveway is of similar length to the Grobs' and runs parallel to it.

¶ 6 Defendants purchased a residence in Elizabeth Pointe in 2021. The Quinn property is situated northwest of defendants' property, and the Grobs' home is located behind defendants' residence to the southwest. The Grobs' 241-foot driveway begins at Elizabeth Pointe Drive, runs directly along the north side of defendants' property, curves around the northwest corner of defendants' property, and continues southwest until it reaches the Grobs' home. We include a photo that was attached to a report submitted in support of plaintiffs' motion for summary judgment for a better understanding of the layout of the properties involved. The court has added labels for clarity.



¶ 7	Defendants were aware of the restrictive covenants in the subdivision, including the need for a fence around a pool, prior to purchasing the home. Defendants began construction of the fence in question without seeking the developer's approval of their plans. Their six-foot-tall vinyl fence was of an opaque white color they believed complied with the covenants' restrictions concerning materials. The fence was constructed completely within defendants' property. Plaintiffs objected to the fence, and in October 2021, sent a cease-and-desist letter, citing the lack of developer approval for its construction. Defendants continued construction of the fence until it was completed.

¶ 8	In December 2021, plaintiffs filed a two-count complaint, requesting an injunction to compel removal of the fence. Plaintiffs alleged the fence violated the restrictive covenants because it was built without the required developer approval. They also contended that it created a private nuisance because it blocked plaintiffs' view of their driveway, creating a safety issue and blocking their view of the woods surrounding their property. Defendants denied the allegations in

the complaint and raised the affirmative defenses of laches and waiver. They also claimed the restrictions were unenforceable due to multiple violations of the restrictive covenants over the years. Plaintiffs sought to strike the affirmative defenses, but no action was taken on the motion to strike.

¶ 9　　　　In defendant Mason Helms's deposition, he testified that he was aware of the subdivision covenants when he purchased the home but also knew there was no homeowners association. Intending to install a pool, Helms proceeded with construction of the fence without contacting the developer. He had learned that the developer had reacted to other neighbors' requests for project approval by telling them he did not want to be contacted about such matters. Additionally, Helms did not believe the fence would be in violation of the covenants because he intended to install a pool. It was also his belief that a fence was required for safety reasons, even before the pool was completed, so there would not be easy access to an open hole in the ground. However, he delayed installation of the pool due to the ongoing litigation.

¶ 10　　　　Helms testified that numerous fences in the subdivision were constructed without prior approval from the developers and that several did not enclose swimming pools. The house next to his had a fence that did not enclose a pool, and there was a chain link fence enclosing one of the other yards. He also listed numerous other violations of the covenants, such as flags, several sheds, and recreational vehicles and trailers parked on the road and in driveways. He argued that "[t]here are several rules in the covenants that are being broken on a daily basis," and those neighbors informed him that "nobody has ever bothered them" about the violations. While defendant was not aware whether plaintiffs had personal knowledge of the violations, he said they were obvious and within view when driving through the subdivision.

¶ 11　　　　In plaintiff Stephen Grob's deposition, he stated his home was on a completely

wooded lot. Before the installation of the fence, he could see his driveway by looking across defendants' backyard. Although he was aware at some point someone could put a fence on the property in front of his lot, the view that crossed defendants' property was "a major selling point" when he bought the lot, and he had enjoyed it for 24 years prior to the fence installation. He acknowledged that there were "six or seven" fences in the subdivision and that some, including one next door to defendants, that did not enclose a swimming pool. His understanding of the covenants was that fences were not allowed without a swimming pool, but he had taken no action against other fence violations. He also acknowledged that the covenants did not restrict fencing material, except to prohibit chain link; he acknowledged that one of the fences in the subdivision was made of chain link.

¶ 12          Stephen also discussed the "blind spot" the fence created on the driveway for his property. Delivery vehicles traveled down his driveway at a high rate of speed when dropping off packages at his home, and if there were a child on either side of the blind turn, a collision "would definitely cause major damage." Some of the companies delivering packages stopped traveling down the driveway and instead began leaving packages at the mailbox along the main road. In sum, Stephen felt that the fence was "ugly" and a safety issue.

¶ 13          Stephen's affidavit acknowledged that there were "a few fences in the subdivision" but that most enclosed a pool and were not opaque. There were four fences in the subdivision that did not enclose a pool, and Grob was unaware of developer approval for those fences. Attached to the affidavit were before-and-after photos of the Grobs' driveway and a video of a mail carrier traversing the driveway at an allegedly high rate of speed.

¶ 14          In plaintiff Terrance Quinn's deposition, he stated that the fence was inconsistent with the aesthetic of the rest of the neighborhood, violated the restrictive covenants, and created a

safety issue. Plaintiffs' grandchildren played on the driveway, and they could not see around the corner after the fence was installed. Typical fences in the neighborhood were black, waist-high fences, with spaced balusters allowing for views to the other side. Terrance was aware of other fences in the subdivision that did not enclose swimming pools and was not aware of any litigation surrounding the construction of those fences. He believed, from conversations with others, that some fences had been approved by the developers.

¶ 15 In plaintiff Joann Quinn's deposition, she stated that she became aware of the fence on defendants' property when Stephen Grob contacted the Quinns about the "ugly white fence." She was concerned about the fence due to the frequent presence of children on the Grobs' driveway and the high rate of speed that postal and package carriers would drive on it. She acknowledged that there were fences in the subdivision that did not enclose a pool and that one was made of chain link. She was unaware if those fences had received developer approval.

¶ 16 Defendants filed a motion for summary judgment, alleging that the uncontested facts showed they were in compliance with the restrictive covenants because Helms intended to install a pool. Further, plaintiffs were aware that the sight lines for their driveway crossed through defendants' backyard that could eventually be obstructed by either a fence or a privacy hedge. Plaintiffs' response to defendants' motion for summary judgment was accompanied by their own motion. They argued that defendants' intention to install a pool did not excuse them from seeking developer approval; regardless, they could have secured approval for the fence by submitting the plans or seeking a declaratory judgment. As to the private nuisance claim, the fence was a substantial, intentional, and unreasonable invasion of the plaintiffs' rights where it obscured sight lines and created a dangerous blind corner on the Grobs' driveway. Even in the absence of the restrictive covenants, defendants enclosing their entire yard with a privacy fence was

unreasonable, and the creation of the blind corner gave plaintiffs a superior interest to have at least a quarter of the fenced area clear for sight lines on the turn in the driveway.

¶ 17       Defendants filed a supplemental motion for summary judgment, arguing that they intended to install a pool and that this was why they erected the fence to begin with. Given their intention to install a pool, defendants argued that construction of the fence did not violate the restrictive covenants. Their contentions regarding the private nuisance claim remained the same. Defendants also filed a resistance to plaintiffs' motion for summary judgment, arguing that genuine issues of material fact precluded judgment in plaintiffs' favor. Specifically, defendants asserted that "[p]laintiffs' entire argument is based upon contested facts and almost void of any pertinent case law that demonstrates, in this case, that they are entitled to judgment as a matter of law."

¶ 18       Attached to the various motions were, among other things, the depositions of the parties, the affidavits of Stephen and Cremeens, and a report from Michael O'Hern, an accident reconstruction expert, titled "Driveway Safety Analysis."

¶ 19       In his affidavit, Cremeens stated that defendants' fence was built in accordance with the covenants. Plaintiffs contacted him multiple times requesting changes to the covenants to make defendants' fence noncompliant, but he refused, stating the fence was not in violation of the covenants; the only strict prohibition applied to chain link fences. He was aware of defendants' intention to build a pool and, while no formal plans were submitted, he would have approved or ignored the fence plans regardless. He was not surprised defendants believed the developers did not want to be contacted for approval of plans, as he and the other developer had communicated "to many residents" of Elizabeth Pointe they did not want to be contacted regarding approvals in the hopes the residents would form their own governing body to rule on such requests. Moreover,

Cremeens opined that plaintiffs would suffer an impaired view of their driveway regardless of the fence due to the "heavily wooded and private nature" of the properties. Plaintiffs subsequently moved to strike Cremeens's affidavit.

¶ 20 O'Hern's report discussed the average speed of vehicles and that of children on bicycles, in combination with the required stopping distances at those various speeds on the Grobs' driveway. It also discussed the stopping requirements of a postal carrier traveling at a speed of 12 miles per hour, as depicted in a video attached to the report. The report opined, in part, that the line of sight along the Grobs' driveway was dramatically reduced by the fence, which "significantly increases the likelihood of a collision within or around the curved area of this driveway." Considering sight lines after the fence was installed, vehicles and bicycles approaching one another from opposite sides of the fence would exceed the "stopping sight distance" if traveling at speeds "in excess of 5 mph to 6 mph."

¶ 21 Although there was no report of proceedings filed in this appeal, the circuit court entered a written order granting plaintiffs' motion for summary judgment and denying defendants' motion. The court found that defendants failed to comply with the procedural requirements of the restrictive covenants by failing to seek approval of the fence plans prior to construction. The court also found that the fence was a private nuisance. In doing so, the court reasoned that plaintiffs' motion to strike Cremeens's affidavit was moot and that plaintiffs were entitled to attorney fees and costs.

¶ 22 Defendants filed a motion to reconsider, arguing, among other things, that plaintiffs' argument that the fence was not in compliance with the restrictive covenants was moot because they were now installing a pool and had complied with the process for developer approval set forth in the restrictive covenants. There were no affidavits attached from defendants swearing

- 9 -

compliance with the approval process, just the bare assertion that they had done so. Attached to the motion was the evidence deposition of Cremeens, which had not previously been provided to the circuit court. Defendants also alerted the court to authority for the proposition that there is no duty in Illinois for individuals on neighboring properties to preserve sight lines or prevent the negligence of others on plaintiffs' driveway. Plaintiffs filed a fee petition seeking costs and fees, as well as a response to defendants' motion to reconsider. The court found that there were no genuine issues of material fact and judgment in favor of the plaintiffs was warranted where the defendants ignored the procedural requirements for construction of the fence. Given the court's conclusion that the fence needed to be removed, it did not reconsider its ruling on the alternative private nuisance theory. In the same order, the court granted plaintiffs' fee petition in the amount of $32,670.50 for attorney fees and $445.32 in court costs.

¶ 23    This appeal followed.

¶ 24                            II. ANALYSIS

¶ 25    Defendants argue on appeal that (1) the restrictive covenants are unenforceable where there is "no access to the procedure in which to gain approval" for the construction of the fence, (2) even if the restrictions are enforceable, the fence should not be removed where it complies with the restrictions, (3) the existence of a prohibited chain link fence in the subdivision evidences prior conduct in allowing any fence to be erected, (4) defendant intended to install a swimming pool in connection with the construction of the fence, and (5) after the circuit court's judgment in favor of plaintiffs, they received approval from Cremeens for the fence and pool, rendering this matter moot.

¶ 26                            A. Jurisdiction

¶ 27    Initially, we note that defendants contend that this matter is moot because they

obtained approval for the construction of a pool and the fence after the court below granted summary judgment. At oral argument, defendants appear to have abandoned this argument, but we nonetheless address it because mootness impacts this court's jurisdiction, as "[t]he existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004); accord *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. We further note that plaintiffs contend that defendants "are stuck with the facts at the time of the hearing" on the motions for summary judgment. Accord *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.*, 226 Ill. App. 3d 507, 509 (1992) ("[U]pon appellate review of a summary judgment ruling the appellant may only refer to the record as it existed at the time the trial court ruled ***."). However, an appeal becomes moot when intervening events, even those while the case is pending on appeal following summary judgment, render it impossible for the reviewing court to order effectual relief. *Felzak v. Hruby*, 226 Ill. 2d 382, 392 (2007).

¶ 28      Regardless of both parties' assertions, we find that this matter is not moot. The alleged approval subsequently obtained from the developer may well affect resolution of the question of whether the restrictive covenants were violated, but it does not render the case itself moot. There is still a controversy between the parties that must be decided (and we do not understand that defendants wish to see the judgment against them to remain standing). Additionally, money damages have been awarded, and the propriety of that award remains at issue on appeal. See *United States v. Washington*, 596 U.S. 832, 837 (2022) ("If there is money at stake, the case is not moot."). We therefore proceed to the merits.

- 11 -

¶ 29                                     B. Summary Judgment

¶ 30          Summary judgment is appropriate if the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). When the parties to an action file cross-motions for summary judgment, it indicates a mutual agreement that there is no genuine issue of material fact but rather *only* a question of law that the circuit court can properly decide based on the record. *A.B.A.T.E. of Illinois, Inc.*, *v. Quinn*, 2011 IL 110611, ¶ 22; *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. However, the filing of cross-motions does not establish that there is no genuine issue of material fact or that summary judgment is required. *Pielet*, 2012 IL 112064, ¶ 28. We are, in fact, obligated under our *de novo* review of a grant of summary judgment to make our own determination of whether a genuine issue of material fact exists and whether the judgment was correct as a matter of law. *Coleman v. Provena Hospitals*, 2018 IL App (2d) 170313, ¶ 15; *International Brotherhood of Electrical Workers, Local 193 v. City of Springfield*, 2011 IL App (4th) 100905, ¶ 14. "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." (Internal quotation marks omitted.) *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. "Genuine" in the context of genuine issues of material fact means that there is evidence to support the position of the nonmoving party. *Pekin Insurance Co. v. Adams*, 343 Ill. App. 3d 272, 275 (2003).

¶ 31          *De novo* review means that this court undertakes its analysis "as if the case had not been heard before and as if no decision had been rendered previously." (Internal quotation marks omitted.) *Blagden v. McMillin*, 2023 IL App (4th) 220238, ¶ 40. We perform the same analysis as the circuit court would in the first instance and give no deference to that court's conclusions or

specific rationale. *Id.* Because summary judgment is a drastic means of concluding litigation, it should only be granted where it would be "clear and free from doubt." (Internal quotation marks omitted.) *Johnson v. Armstrong*, 2022 IL 127942, ¶ 31. We may affirm a grant of summary judgment on any basis supported by the record, and a reviewing court "need not strain to adduce some remote factual possibility that will defeat the motion." *Eakins v. New England Mutual Life Insurance Co.*, 130 Ill. App. 3d 65, 68 (1984).

¶ 32                                     1. *Restrictive Covenants*

¶ 33         We turn to the circuit court's determination that plaintiffs were clearly entitled to summary judgment regarding their claim that defendants violated the restrictive covenants. We find that there is a genuine issue of material fact that precluded the granting of summary judgment in favor of either party.

¶ 34         First, the circuit court must address whether defendants' failure to seek developer approval is required given the evidence—which the court must accept at this stage—that the developer was not responding to other residents' requests for approval of other projects. If the developer was no longer exercising its envisioned gatekeeping role under the covenants, the court must decide whether this excused defendants from taking the arguably pointless step of seeking such approval. Similarly, the court must consider Cremeens's testimony that, even if asked, he would either have ignored defendants' request or granted it. Moreover, it appears from the record that the developers had directed residents to stop sending requests for approval to them, possibly frustrating the approval process. The issue can be viewed as essentially one of proximate cause, as plaintiffs must show that defendants' failure to comply with the covenants caused them some injury. See *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 394 (2004) (noting proximate cause is generally a fact issue that encompasses the question of whether there is a reasonable

certainty that a defendant's acts caused the injury or damage). If the evidence shows that defendants' plans *would have* been approved by a developer had they been submitted (or been effectively approved by the developer's inaction), then failure to seek approval *in advance* would have caused no injury to plaintiffs. The evidence permits different inferences that may be drawn from the evidence as to whether defendants' application was likely to be either approved or ignored had approval been sought, so the circuit court erred in resolving these issues by granting summary judgment.

¶ 35        Second, the circuit court seems to have completely overlooked the factual issues arising out of defendants' affirmative defenses of *laches*, waiver, and systemic nonenforcement of the covenants. In the judicial enforcement of restrictive covenants, all doubts will be resolved in favor of natural rights in the use of a property and against restrictions thereon. *Pettey v. First National Bank of Geneva*, 225 Ill. App. 3d 539, 545 (1992). Restrictions on a property "will not be enforced if the one seeking enforcement has waived or abandoned the restriction or has acquiesced in its waiver or abandonment by others." *Tones Inc. v. LaSalle National Bank of Chicago*, 34 Ill. App. 3d 236, 242 (1975) (citing *McGovern v. Brown*, 317 Ill. 73 (1925); *Kneip v. Schroeder*, 255 Ill. 621 (1912); *Curtis v. Rubin*, 244 Ill. 88 (1910)); see *Watts v. Fritz* 29 Ill. 2d 517 (1963) (finding that the plaintiff acquiesced to prior violations of the restrictive covenant and thereby waived any right to enforce the covenants). Whether such an abandonment or acquiescence has occurred depends upon the facts and circumstances of the particular case. See *Punzak v. De Lano*, 11 Ill. 2d 117, 119-20 (1957).

¶ 36        In their answer to the complaint, defendants asserted affirmative defenses that the restrictive covenants were unenforceable and that plaintiffs had waived enforcement due to numerous violations of the covenants regarding fences throughout the subdivision. The affirmative

- 14 -

defenses advanced by defendants are commonly characterized as abandonment or acquiescence, although the term waiver is also used, when asserted against compliance with restrictive covenants. The depositions on file show that Helms claimed that a chain link fence was constructed in the subdivision, despite such a fence being specifically prohibited in the covenants. Helms, in his deposition, also asserted that numerous fences in the subdivision were constructed without prior approval from the developers and that several fences, including his neighbors', did not enclose swimming pools. One of his neighbors did not seek permission before installing a fence, and he also stated he did not know if other fences were erected with permission. He also listed numerous other violations of the covenants, such as flags, several sheds, recreational vehicles, and trailers parked on the road and in driveways. He argued that "[t]here are several rules in the covenants that are being broken on a daily basis," and those neighbors informed him that "nobody has ever bothered them" about the violations. See *Amoco Realty Co. v. Montalbano*, 133 Ill. App. 3d 327, 333 (1985) ("[T]he existence of other minor violations does not necessarily establish a waiver."). While defendant was not aware whether plaintiffs had personal knowledge of the violations, they were obvious and within view when driving through the subdivision.

¶ 37    In Stephen's deposition, he acknowledged that there were "six or seven" fences in the subdivision and that some, including one next door to defendants, did not enclose a swimming pool. His understanding of the covenants was that fences were not allowed without a swimming pool, but no one, including plaintiffs, had taken any action against other fence violations in the subdivision. He also acknowledged that one of the fences in the subdivision was chain link. His subsequent affidavit acknowledged that there were "a few fences in the subdivision," but most enclosed a pool. There were four fences in the subdivision that did not enclose a pool, and he was unaware of whether the developer approved those fences.

¶ 38       In her deposition, Joann acknowledged that there were fences in the subdivision that did not enclose a pool and that one was made of chain link. She was unaware if the developer had approved those fences.

¶ 39       Cremeens's affidavit established that the only fence that he believed the covenants strictly prohibited was one made of chain link.

¶ 40       In sum, there was sufficient evidence in the record to support defendants' affirmative defenses and create a genuine issue of material fact that precluded summary judgment for plaintiffs while still requiring denial of defendants' motion as well. By their very nature, the affirmative defenses of waiver and abandonment asserted by defendants are fact intensive. See *De Lano*, 11 Ill. 2d at 119-20. The depositions revealed a material violation of the covenant against fences where the only strict prohibition—that against chain link fences—was conspicuously violated. Further, there were numerous other fences constructed that did not enclose pools, another condition prohibited under the covenants. One of those fences was in defendants' neighbor's yard immediately to the south; plaintiffs were aware of its presence but took no action. Although plaintiffs moved to strike defendants' affirmative defenses, plaintiffs never obtained a ruling on their motion.

¶ 41       Accordingly, the circuit court erred in granting summary judgment on count I, as genuine issues of material fact were present. Our conclusion requires that we reverse the judgment entered on count I, including the award of fees and costs in favor of plaintiffs. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).

¶ 42                                    2. *Private Nuisance*

¶ 43       We turn next to the circuit court's grant of summary judgment on count II's claim to enjoin a private nuisance. Plaintiffs alleged in their complaint that the fence constructed by

defendants blocked the "view of most of their driveway and views from their property." They claimed that the obstructed view of the driveway created a "safety issue" for vehicles and individuals entering the property via their driveway. Plaintiffs reiterated these two points in their motion for summary judgment, noting the fence created a "dangerous blind corner."

¶ 44       "A private nuisance is a substantial invasion of another's interest in the use and enjoyment of his or her land." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 204 (1997). The invasion must be substantial and either intentional or negligent and unreasonable. *Id.* In determining whether particular conduct constitutes a nuisance, the standard is the conduct's effect on a reasonable person. *Id.*

¶ 45       Before tackling this issue directly, we pause to address plaintiffs' argument that the case law presented by defendants on appeal was not advanced in the court below at the time of summary judgment and is thus waived. However, although we "require parties to preserve issues or claims for appeal; we do not require them to limit their arguments here to the same arguments that were made below." *Brunton v. Kruger*, 2015 IL 117663, ¶ 76. Plaintiffs' own pleadings raise the question of whether they are legally entitled to an unobstructed view over defendants' property, and plaintiffs cite no authority for the proposition that we should ignore relevant authority on this point if it was not also cited below. We are unable to deem matters of well-established law waived or forfeited as we undertake our *de novo* review of the judgment entered below. See *Essig v. Advocate BroMenn Medical Center*, 2015 IL App (4th) 140546, ¶ 57 (stating the need for an objection below is obviated because of our *de novo* review and the fact that " 'forfeiture is a limitation on the parties and not on this court, which has a responsibility to achieve a just result and maintain a sound and uniform body of precedent' ") (quoting *Roxana Community Unit School District No. 1 v. Environmental Protection Agency*, 2013 IL App (4th) 120825, ¶ 39).

¶ 46       We disagree with plaintiffs' contention that the law of nuisance permits them to abate any obstructions to their view over defendants' property. Property owners in Illinois are entitled to use and enjoy their property in the manner that they see fit. *City of Dixon v. Messer*, 136 Ill. App. 488, 491 (1907). Established law recognizes that while a property owner may not place anything harmful or offensive on his property, in the absence of an easement or grant to the contrary, "he may erect a high wooden building or he may build a fence or a wall fifty feet high on his own land, and thereby cut off the light and air and *view* of his neighbor ***." (Emphasis added.) *Id.*; see *Guest v. Reynolds*, 68 Ill. 478, 483 (1873). Plaintiffs argue that in this case, defendants not only obstructed their view across defendants' property, but also their view of their own property. We see this as a distinction without a difference, as a landowner has no prescriptive right and may not dictate an unobstructed view over a neighboring property. See *Carroll v. Hurst*, 103 Ill. App. 3d 984, 990 (1982); *Reynolds*, 68 Ill. at 483.

¶ 47       Having found plaintiffs' claim for private nuisance based on generally obstructed sight lines is not actionable under Illinois law, we conclude that it was error for the circuit court to have granted summary judgment in favor of plaintiffs on this theory.

¶ 48       Our analysis does not change because plaintiffs characterize the issue as one of "safety." Underlying this contention is still the assumption that one landowner may impose restrictions on a neighbor's use of his own property because of the effect it will have on sight lines. We need look no further than *Ziemba v. Mierzwa*, 142 Ill. 2d 42 (1991), to conclude that plaintiffs' theory finds no support in the law.

¶ 49       In *Ziemba*, the plaintiff was injured when his bicycle collided with a dump truck that negligently exited the defendant's driveway without ascertaining that the roadway was clear. *Id.* at 45. The driveway was not visible from the roadway and was obscured by foliage on

defendant's property. *Id.* The plaintiff filed suit, alleging that the defendant had failed to use " 'reasonable care in the conduct of activities on his property, so as not to cause damage or injury to persons on the adjacent roadway.' " *Id.* at 46. The defendant filed a motion to dismiss (Ill. Rev. Stat. 1987, ch. 110, ¶ 2-615), which was granted by the circuit court.

¶ 50 On appeal to the Illinois Supreme Court, it was found that the defendant did not have a duty to maintain his property to preserve the plaintiff's view of the driveway from the adjacent roadway. *Ziemba*, 142 Ill. 2d at 52. The court noted that the foliage alone was not dangerous, but it and the driveway only became dangerous by the addition of the dump truck exiting onto the road; the defendant had a right to expect the driver to check for oncoming traffic before entering the roadway. Because the condition on the defendant's land posed no danger to the plaintiff without the independent negligent act of the driver, the court found the accident in this case was not a reasonably foreseeable result of the condition on the defendant's land. *Id.* at 51-52. Because the condition on the defendant's land was not dangerous without the driver's negligent act, the plaintiff's position effectively asked the court to impose a duty on the defendant to guard against the negligence of others. The court opined that " 'the imposition of a general duty to anticipate and guard against the negligence of others would place an intolerable burden on society.' " *Id.* at 52; see *Adame v. Munoz*, 287 Ill. App. 3d 181, 186-87 (1997) (holding that a dumpster on defendant's property which obscured portions of an intersection was not inherently dangerous and only became so when others failed to exercise caution when approaching the obscured intersection).

¶ 51 We believe that *Ziemba* demonstrates the proper analysis here, where, standing alone, the fence and driveway were not dangerous. Rather, the combination of the two only becomes dangerous when a vehicle is driven down the driveway too fast given the obstructed view.

As noted in O'Hern's expert report, if a bicycle and vehicle are heading toward each other from opposite sides of the obscure corner, the parties should be able to avoid a collision if they are traveling at a reasonable speed.

¶ 52        Plaintiffs also compare the fence in this case to the mention in *Ziemba* of concrete abutments placed along the edge of a highway to advance the theory that the fence was a dangerous condition. See *Ziemba*, 142 Ill. 2d at 49. However, we also reject this argument because, as explained above, the fence itself is not inherently dangerous. Furthermore, the gist of plaintiffs' nuisance claim is that the fence obscures their sight line, but they have also conceded that the same result could have been caused by a privacy hedge. Ultimately, it is the unique layout of plaintiffs' property being built, in essence, *behind* defendants' property, that is at the root of plaintiffs' sight line limitations, but having purchased property in such a configuration, they cannot now employ the law of nuisance to restrict defendants' use and enjoyment of theirs.

¶ 53        Having concluded that plaintiffs' private nuisance cause of action is unsupported by Illinois law, we find that the circuit court erred in entering summary judgment in favor of plaintiffs and in denying defendants' motion for summary judgment on count II. We therefore direct the court on remand to enter judgment in favor of defendants on count II.

¶ 54                                    C. Remand

¶ 55        Having found that this matter must be remanded to the circuit court on count I, we note that defendants' contention that the subsequently obtained developer approval negates this cause of action must be addressed. On remand, we direct the court to consider whether count I of this cause is viable in light of any evidence as to the developer's alleged approval of defendants' plans for a fence and pool (or its indifference to those plans).

¶ 56                                    III. CONCLUSION

¶ 57        For the reasons stated, we reverse the circuit court's entry of summary judgment on both counts, including the award of costs and fees on count I; we direct the court to enter judgment in favor of defendants on count II; and we remand for further proceedings on count I consistent with this order.

¶ 58        Reversed and remanded.