Docket No. 103755.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

GERALDINE FELZAK, Appellee, v. RALPH HRUBY *et al.*, Appellants.

*Opinion filed September 20, 2007.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Freeman, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Chief Justice Thomas took no part in the decision.

## OPINION

In this case we are asked to revisit our decision in *In re M.M.D.*, 213 Ill. 2d 105 (2004), and again address whether *Wickham v. Byrne*, 199 Ill. 2d 309 (2002), which held unconstitutional Illinois' grandparent visitation statute, invalidated a preexisting agreed order for grandparent visitation. However, because the minor who was the subject of the agreed visitation order at issue here has turned 18 during the pendency of this appeal, the case has been rendered moot. We vacate the judgments of the courts below and remand the cause with instructions to dismiss.

## Background

Ralph and Deborah Hruby were married in 1977 and had three children: Greg, born November 25, 1983, Jeff, born August 4, 1985, and Katie, born July 22, 1989. Shortly after Katie's birth, in October of 1989, Deborah died of a cerebral hemorrhage.

In 1992, Ralph married Sondra. Sondra Hruby adopted Ralph's three children in November of 1993.

Geraldine Felzak is the mother of Deborah Hruby. In the spring of 1994, Geraldine filed an amended petition for grandparent visitation in the circuit court of Du Page County pursuant to section 607(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607(b) (West 1992)). In the petition, Geraldine alleged that, following the death of her daughter, she had cared for and maintained close contact with Greg, Jeff and Katie. Geraldine further alleged that, in December of 1993, Ralph and Sondra had informed her that she would no longer be permitted to have visitation with the children. Geraldine sought an order establishing reasonable visitation privileges.

Ralph and Sondra filed an answer to Geraldine's amended petition for grandparent visitation. Included in their answer was the affirmative defense that section 607(b) of the Illinois Marriage and Dissolution of Marriage Act, commonly known as the grandparent visitation statute, was unconstitutional under both the federal and state constitutions. In support of this contention, Ralph and Sondra maintained, among other things, that the statute permitted "undue interference with the fundamental right of parents to raise children and conduct family life *** in the absence of a compelling State interest." Ralph and Sondra sought dismissal of Geraldine's petition.

On April 29, 1994, the circuit court referred the parties to a psychologist for conciliation counseling. In October of 1994, the psychologist submitted a "Psychological Evaluation/Conciliation Report," which recommended that visitation between Geraldine and the children continue.

On December 16, 1994, the parties entered into an agreed order in "full and complete settlement of all pending petitions and responses thereto." Pursuant to recommendations contained in the conciliation report, the parties agreed that Geraldine would be permitted visitation with her grandchildren one day a month for six hours, and would be

permitted to visit over the phone with the children for up to 30 minutes, once a month. The parties further agreed that, in the event of a dispute regarding the terms of the order, they would meet with a conciliator to mediate the disagreement, before proceeding to court.

Some four months later, in April of 1995, Geraldine filed a "Petition for Further Conciliation and Other Relief." In this petition, Geraldine alleged that, since the entry of the December 16, 1994, agreed order, she had not had any visitation with Greg or Jeff. Geraldine also alleged that Katie, while visiting with her, had requested additional visitation time, including overnight visitation. Geraldine requested that the court direct Ralph and Sondra to participate in further conciliation to resolve these issues.

Geraldine's petition was set for hearing in August of 1995. Prior to that date, however, on June 15, 1995, the parties entered into a second agreed order. In this order, the parties agreed to increase Geraldine's visitation with Katie from 6 hours per month to a total of 10 hours per month, with the terms of the first agreed order otherwise remaining in effect. In addition, Geraldine agreed to withdraw her pending petition for further conciliation and other relief.

Almost 10 years later, on February 24, 2005, Geraldine filed a petition pursuant to section 607.1 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607.1 (West 2004)), seeking to enforce the agreed order of June 15, 1995. By this time, the two older Hruby children, Greg and Jeff, had reached majority. Katie was 15. In the petition to enforce, Geraldine alleged that Ralph had willfully and without justification denied her visitation with Katie since May of 2004. Geraldine requested the court to direct Ralph to comply with the agreed order entered on June 15, 1995, and award make-up visitation time with Katie.

In response to Geraldine's petition, Ralph and Sondra filed an amended motion to dismiss pursuant to section 2–619 of the Code of Civil Procedure (735 ILCS 5/2–619 (West 2004)). Ralph and Sondra argued in the motion that, because *Wickham v. Byrne*, 199 Ill. 2d 309 (2002), had held the grandparent visitation statute unconstitutional on its face, the statute was void *ab initio*, and the circuit court had no subject matter jurisdiction to enter the agreed order of June 15, 1995. Thus, according to Ralph and Sondra, the June 1995 order was void

and unenforceable, and Geraldine's petition to enforce that order should be dismissed.

In further pleadings, Ralph and Sondra also sought to distinguish this court's decision in *In re M.M.D.*, 213 Ill. 2d 105 (2004). In *In re M.M.D.*, this court held that an agreed order establishing custody of a minor, which included a provision for grandparent visitation, was not invalidated by *Wickham*. In so holding, we stated that the agreed order for visitation was a consent decree. As such, the order was not a judicial determination of the parties' rights but, rather, a recording of their agreement. *In re M.M.D.*, 213 Ill. 2d at 114. We then explained that the agreement for grandparent visitation was not at odds with *Wickham*:

> "The constitution prohibits the state from forcing fit parents to yield visitation rights to a child's grandparents when the parents do not wish to do so merely because a trial judge believes that such visitation would be appropriate. See *Wickham*, 199 Ill. 2d at 320-22. There is no corresponding constitutional prohibition against a fit parent's decision to *voluntarily* bestow visitation privileges on his child's grandparents. To the contrary, the very constitutional principles that required us to strike down the grandparent visitation statute in *Wickham* require that a parent's voluntary visitation decision be honored. If fit parents have a fundamental right to make decisions regarding the care, custody and control of their children, as *Wickham* and the cases on which it was based held, they must likewise have the fundamental right to agree to visitation by the children's grandparents if they wish to do so. To hold otherwise would require us to fashion a rule under which a parent's right to choose the persons with whom a child associates somehow stops at the grandparents' front door. We can see no possible justification for imposing such a limitation. The constitutional protections afforded parenthood therefore obligate the courts to uphold voluntary visitation agreements made by fit parents, not declare them invalid. As a result, the circuit and appellate courts were correct to conclude that the voluntary visitation agreement into which Johnson entered with the Duncans was

-4-

not void and unenforceable." (Emphasis in original.) *In re M.M.D.*, 213 Ill. 2d at 115-16.

Before the circuit court, Ralph and Sondra noted that the agreed order for grandparent visitation which was at issue in *In re M.M.D.* arose out of custody proceedings brought under the Illinois Parentage Act and the Illinois Probate Act. In this case, however, Geraldine's petition for visitation was brought solely under the grandparent visitation statute held unconstitutional in *Wickham*. From this, Ralph and Sondra maintained that, while subject matter jurisdiction was present at the time the agreed order was entered in *In re M.M.D.*, it was lacking when the June 15, 1995, order was entered in the case at bar.

The circuit court denied Ralph and Sondra's motion to dismiss Geraldine's petition to enforce. In so ruling, the circuit court emphasized that Ralph and Sondra could have pursued their constitutional challenge to the grandparent visitation statute at the time Geraldine filed her petition for visitation but, instead, chose to settle. Because Ralph and Sondra "did not pursue [their] objection to the jurisdiction of the Court at the time [they] entered into the agreed order," the circuit court found this case controlled by *In re M.M.D.* The circuit court concluded, therefore, that the June 15, 1995, agreed order remained valid and enforceable.

Thereafter, Geraldine filed a petition for rule to show cause why Ralph and Sondra should not be held in contempt of court for failing to comply with the agreed order of June 15, 1995. Following a hearing, and based primarily on the reasoning offered in denying the motion to dismiss Geraldine's petition to enforce, the circuit court held Ralph and Sondra in indirect civil contempt for failing to comply with the June 15, 1995, order. The circuit court also ordered, *sua sponte*, that the parties not communicate with Katie regarding the court proceedings.

The circuit court's contempt order directed that either Ralph or Sondra be incarcerated over the following weekend, and each weekend thereafter, until they produced Katie for visitation. The contempt order further stated that Ralph and Sondra could "purge themselves of this court's order of contempt by providing visitation of Katie Hruby to Geraldine Felzak for a period of 10 hours a month to

be held on one weekend day a month beginning during the month of September, 2005 and continuing monthly thereafter."

Ralph and Sondra subsequently filed a notice of appeal from both the circuit court's contempt order and the order denying their motion to dismiss Geraldine's petition to enforce. The appellate court stayed the contempt order pending disposition of the appeal.

On appeal, the appellate court vacated the circuit court's order that the parties not communicate with Katie, but otherwise affirmed the judgment of the circuit court. 367 Ill. App. 3d 695. Initially, the appellate court agreed with Ralph and Sondra that, because the proceedings in *In re M.M.D.* were brought under the Illinois Parentage Act and the Illinois Probate Act, that case did not resolve their jurisdictional challenge to the June 15, 1995, agreed order. 367 Ill. App. 3d at 702-03. Nevertheless, the appellate court concluded that the circuit court did have jurisdiction to enter the agreed order because, prior to the adoption of the grandparent visitation statute, there was a common law right to grandparent visitation. 367 Ill. App. 32d at 706-08. The appellate court acknowledged that the "special circumstances" test, which was applied at common law for determining grandparent visitation, was no longer valid in light of *Wickham*. However, the appellate court concluded that *Wickham* did not completely eliminate grandparent visitation as a matter for the courts and that, under the common law, "grandparent visitation cases remain justiciable matters that trial courts of this state have subject matter jurisdiction to hear." 367 Ill. App. 3d at 708.

The appellate court also rejected Ralph and Sondra's argument that, because Geraldine filed her petition for visitation solely under the grandparent visitation statute, and not the common law, the common law could not be used to invoke jurisdiction. The appellate court concluded: "We do not believe that the recitation of the unconstitutional statute in the petition, or the failure to specifically invoke the common law, changes the fact that the petition concerns the justiciable matter of grandparent visitation, over which the court has jurisdiction." 367 Ill. App. 3d at 710.

Justice McLaren dissented on this issue. In Justice McLaren's view, because the only count pled by Geraldine was statutory, the common law could not be used to invoke jurisdiction and the June 15,

1995, order should have been held void. 367 Ill. App. 3d at 722-24 (McLaren, J., dissenting in part and concurring in part).

Finally, the appellate court rejected Ralph and Sondra's claim that the agreed order of June 15, 1995, was invalid because Geraldine's visitation petition had no basis in law and, thus, her forbearance of that claim provided no consideration for the visitation agreement. 367 Ill. App. 3d at 712-18. Accordingly, having concluded that the June 15, 1995, order was not void, the appellate court affirmed the circuit court's denial of Ralph and Sondra's motion to dismiss Geraldine's petition to enforce, and affirmed the finding of indirect civil contempt. 367 Ill. App. 3d at 721-22. We subsequently granted Ralph and Sondra's petition for leave to appeal. 210 Ill. 2d R. 315.

Analysis

Two rulings are before us in this appeal: the circuit court's order holding Ralph and Sondra in indirect civil contempt for failing to comply with the June 15, 1995, agreed order and the circuit court's denial of Ralph and Sondra's motion to dismiss Geraldine's petition to enforce the June 15, 1995, order. We first consider the contempt order.

In general, civil contempt is "a sanction or penalty designed to compel future compliance with a court order." *People v. Warren*, 173 Ill. 2d 348, 368 (1996). Civil contempt is a coercive sanction rather than a punishment for past contumacious conduct. *Warren*, 173 Ill. 2d at 368. For this reason, a valid purge condition is a necessary part of an indirect civil contempt order. *In re Marriage of Logston*, 103 Ill. 2d 266, 289 (1984). A contemnor must be able to purge the civil contempt by doing that which the court has ordered him to do. *Logston*, 103 Ill. 2d at 289 ("the civil contemnor must be provided with the 'keys to his cell' ").

Katie turned 18 on July 22, 2007. Once Katie turned 18, it became impossible for Ralph and Sondra to purge the civil contempt imposed by the circuit court. Ralph and Sondra cannot compel Katie, an adult, to visit Geraldine. *Cf. In re Marriage of Casarotto*, 316 Ill. App. 3d 567, 571 (2000) (the circuit court lacks jurisdiction to enter a visitation order against a person who has attained majority).

Because Ralph and Sondra can no longer compel Katie to visit Geraldine, the rationale for the civil contempt order in this case has been lost. When a situation such as this occurs, the appropriate disposition of the case, and the action we take here, is to vacate the judgments of the lower courts and remand the cause with instructions to dismiss. *Shillitani v. United States*, 384 U.S. 364, 371, 16 L. Ed. 2d 622, 627-28, 86 S. Ct. 1531, 1536 (1966); see also *Sanders v. Shephard*, 163 Ill. 2d 534, 541 (1994) ("As a requirement of due process, then, a civil contempt order will be vacated once it is evident that the sanction imposed is no longer fulfilling its original, coercive function"). Vacating the contempt judgments below leaves nothing before us with respect to the contempt order to review. Those issues raised in the contempt proceedings are necessarily moot.

Similarly, those issues presented by the circuit court's ruling on Geraldine's petition to enforce the agreed visitation order of June 15, 1995, are also moot. When "intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party" (*In re J.T.*, 221 Ill. 2d 338, 349-50 (2006)), then the appeal, and issues therein, are considered moot. "The fact that a case is pending on appeal when the events which render an issue moot occur does not alter this conclusion." *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116-17 (1992), citing *Bluthardt v. Breslin*, 74 Ill. 2d 246, 250 (1979). No relief can be granted Geraldine with respect to her petition to enforce the June 15, 1995, order because the courts cannot force Katie, who is now an adult, to visit Geraldine. *Casarotto*, 316 Ill. App. 3d at 571. It is therefore a moot question whether the circuit court correctly concluded that *In re M.M.D.* controls the present case and, in so holding, properly denied Ralph and Sondra's motion to dismiss Geraldine's petition to enforce.

An issue raised in an otherwise moot appeal may be addressed, however, where " 'the magnitude or immediacy of the interests involved warrant[s] action by the court' or where the issue is ' "likely to recur but unlikely to last long enough to allow appellate review to take place because of the intrinsically short-lived nature of the controversies." ' " *Dixon*, 151 Ill. 2d at 117-18, quoting *First National Bank of Waukegan v. Kusper*, 98 Ill. 2d 226, 235 (1983),

quoting *People ex rel. Black v. Dukes*, 96 Ill. 2d 273, 277-78 (1983). Neither of these two exceptions is applicable in this case.

First, for the latter of the two exceptions to apply, "there must be a reasonable expectation that the same complaining party would be subject to the same action again and the action challenged must be of such short duration that it cannot be fully litigated prior to its cessation." *In re J.T.*, 221 Ill. 2d at 350. This standard is not met here because all the Hruby children have reached majority. Geraldine cannot again challenge Ralph and Sondra's failure to comply with the June 15, 1995, agreed order.

The former exception, known as the public interest exception, is applicable only if there is a clear showing that: (1) the question at issue is of a substantial public nature; (2) an authoritative determination is needed for future guidance; and (3) the circumstances are likely to recur. *In re J.B.*, 204 Ill. 2d 382, 387 (2003). The exception is narrowly construed and requires a clear showing of each criterion. *In re India B.*, 202 Ill. 2d 522, 543 (2002).

Whether our decision in *In re M.M.D.* is controlling in this appeal, and, thus, establishes the validity of the June 15, 1995, agreed order, is clearly an issue of importance to those who are subject to similar visitation orders. However, it has not been clearly established that this issue is of sufficient breadth, or has a significant effect on the public as a whole, so as to satisfy the substantial public nature criterion.

Moreover, it is apparent that an authoritative determination on the scope of *In re M.M.D.* is not needed for future guidance. There is no reported appellate opinion, filed after *In re M.M.D.*, which holds that agreed orders for grandparent visitation are unenforceable. Even the appellate court in this case, although it distinguished *In re M.M.D.*, did not reach a result at odds with that decision. This is not an instance, then, where there is a pressing need for an advisory opinion from this court. See *In re J.T.*, 221 Ill. 2d at 350-51; *In re Adoption of Walgreen*, 186 Ill. 2d 362, 366 (1999).

Finally, while undoubtedly there exist other agreed orders similar to the one at issue here, *i.e.*, those entered prior to this court's decision in *Wickham*, we note that the number of such orders is diminishing as the children affected by those orders reach majority. It is unclear, therefore, to what extent the issues raised in this case are likely to recur.

The criteria for the public interest exception have not been clearly established. Consequently, we conclude that this is not a case where " 'the magnitude or immediacy of the interests involved warrant[s] action by the court.' " *Dixon*, 151 Ill. 2d at 117.

Because we do not reach the merits of the petition to enforce the June 15, 1995, agreed order, we cannot speak to the correctness of the judgments rendered by the circuit and appellate courts in this matter. Accordingly, "[t]o prevent the appellate court's resolution of the issues presented to it from standing as precedent for future cases, we vacate the judgments of both the appellate and circuit courts." *People ex rel. Black v. Dukes*, 96 Ill. 2d 273, 278 (1983); *George W. Kennedy Construction Co. v. City of Chicago*, 112 Ill. 2d 70, 78 (1986); *First National Bank of Waukegan v. Kusper*, 98 Ill. 2d 226, 236 (1983); see also *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40, 95 L. Ed. 36, 41, 71 S. Ct. 104, 106-07 (1950) (when an appeal is rendered moot through happenstance, the judgments of the courts below are vacated); *Commodity Futures Trading Comm'n v. Board of Trade*, 701 F.2d 653, 656-57 (7th Cir. 1983). As with the contempt proceedings, the cause is remanded to the circuit court with instructions to dismiss the petition to enforce. *La Salle National Bank v. City of Chicago*, 3 Ill. 2d 375, 382 (1954); *Munsingwear*, 340 U.S. at 39, 95 L. Ed. at 41, 71 S. Ct. at 106.

## Conclusion

For the foregoing reasons, the judgments of the appellate and circuit courts are vacated. The cause is remanded to the circuit court with instructions to dismiss Geraldine's petition for rule to show cause and petition to enforce.

*Appellate court judgment vacated;*
*circuit court judgment vacated;*
*cause remanded with directions.*

CHIEF JUSTICE THOMAS took no part in the consideration or decision of this case.