No. 4-07-0703                    Filed 6/13/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: Atul R., a Person Found Subject ) Appeal from
to Involuntary Treatment,               ) Circuit Court of
THE PEOPLE OF THE STATE OF ILLINOIS,    ) Sangamon County
     Petitioner-Appellee,         ) No. O7MH501
     v.                           )
ATUL R.,                                ) Honorable
     Respondent-Appellant.        ) George H. Ray,
                                        ) Judge Presiding.

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a July 2007 hearing, the trial court found respondent, Atul R., subject to involuntary treatment (405 ILCS 5/2-107.1 (West 2006)).

Respondent appeals, arguing that (1) the State failed to prove by clear and convincing evidence that he was subject to involuntary treatment, and (2) the trial court's order authorizing involuntary treatment failed to comply with the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2-107.1(a-5)(1) (West 2006)) because his criminal defense attorney was not notified of the petition. Because we agree with respondent's second argument, we reverse.

Respondent was found unfit to stand trial on a charge not specified in the record. He was admitted to the McFarland Mental Health Center (MMHC). In July 2007, Sreehari Patibandla, respondent's psychiatrist at MMHC, filed a petition seeking to involuntarily administer treatment to respondent. The petition

alleged that (1) respondent (a) had a mental illness, (b) refused to receive psychotropic medication, and (c) exhibited (i) deterioration of his ability to function, (ii) suffering, or (iii) threatening behavior; (2) respondent's mental illness had existed for a period of time marked by the continuing presence of symptoms or the repeated episodic occurrence of symptoms; (3) respondent lacked the capacity to make a reasoned decision about the psychotropic medication; (4) the benefits of the psychotropic medication clearly outweighed the harm; and (5) other less-restrictive services were explored and found inappropriate. The petition requested the following medications: (1) Geodon (80 to 240 milligrams per day), (2) lithium (600 to 2,100 milligrams per day), and (3) lorazepam (2 to 8 milligrams per day). The petition also requested the use of certain blood tests necessary for the safe and effective administration of the requested medications.

At the hearing on the petition, which was held later in July 2007, Patibandla testified that respondent had been diagnosed with bipolar disorder. As a result of that mental illness, respondent developed delusional thoughts and threatening behavior. Patibandla explained that during the previous seven days, respondent had been involuntarily medicated. Respondent had made statements that he would "mess up" staff members and "statements of killing." Respondent told Patibandla that he felt the presence of "the evil angels" in the hospital and was going to kill them. Following the medication, respondent experienced improved

- 2 -

sleep and less "pressured" speech patterns. Patibandla opined that respondent lacked the capacity to give informed consent as to his treatment because he did not think he was mentally ill or needed medication.

Patibandla then testified that in the involuntary-treatment petition, he had requested (1) Geodon, lithium, and lorazepam as the first-choice medications and (2) Zyprexa, Abilify, Seroquel, valproic acid, and Trileptal as alternative medications. Patibandla opined that the medications would allow respondent to sleep better and "[h]is energy level would be more in tune with everyone else." Further, the medications would "help with the delusional thinking" and allow respondent to "rationally converse."

Patibandla acknowledged that the suggested "mood stabilizers" had possible side effects. He explained that respondent previously had received multiple doses of Geodon without any side effects. Patibandla also stated that respondent would be monitored for possible side effects through certain testing and procedures. Patibandla opined that the potential benefits of the proposed medications clearly outweighed the potential harm if respondent did not receive them. Patibandla further stated that other less-invasive treatment was inappropriate for respondent.

The trial court admitted in evidence the State's exhibit No. 1, which was a list of medical and nursing staff who were authorized to administer the requested medications to

- 3 -

respondent.

Respondent interjected during counsel's cross-examination of Patibandla that his former guru was "the Devil himself." Respondent stated that he was "the second coming of Jesus Christ," a messenger of Christ, and "Nicodemus in my past life." Respondent was dismissed from medical school "because of Lucifer's direct involvement with my life." He believed "Lucifer" wanted to destroy him because he represented "the truth of the second coming of Jesus Christ." Further, respondent stated he did not have a "violent intention" when he committed armed robbery, explaining that he "deliberately used a BB gun."

On direct examination, respondent testified that the medications sought to be administered were very dangerous and "extremely sedative." They caused respondent to function as a "zombie." He did not believe he was mentally ill. Respondent would "relish the opportunity of psychotherapy." Respondent testified that he was not violent and did not threaten anyone.

Based on the evidence, the trial court found "the treatment requested is needed and would be beneficial to the patient."

This appeal followed.

As an initial matter, on March 20, 2008, the State filed a motion to cite supplemental authority, In re Alfred H.H., 379 Ill. App. 3d 1026 (2008). On March 28, 2008, respondent responded to the State's motion requesting this court deny the motion. We ordered respondent's response to the State's motion

- 4 -

taken with the case and now deny it.

Respondent argues that the trial court's order authorizing involuntary treatment failed to comply with the Code because his criminal defense attorney was not notified of the petition. Before considering the merits of this issue, we address two preliminary matters. Specifically, we consider whether the issue is moot and whether the respondent waived review of the issue (more specifically referred to as forfeiture and procedural default (People v. Corrie, 294 Ill. App. 3d 496, 506, 690 N.E.2d 128, 135 (1998))).

First, the issue is moot. The underlying judgment, entered by the trial court on July 27, 2007, was limited to 90 days, which have passed.

An issue raised in an otherwise moot appeal may be addressed when (1) the immediacy or magnitude of the interests involved in the case warrants the reviewing court's action or (2) "'the issue is "'likely to recur but unlikely to last long enough to allow appellate review to take place because of the intrinsically short-lived nature of the controversies.'"' [Citations.]" Felzak v. Hruby, 226 Ill. 2d 382, 392, 876 N.E.2d 650, 657-58 (2007).

The first exception to the mootness doctrine, known as the public-interest exception, applies only if a clear showing exists that (1) the question at issue is of "a substantial public nature," (2) an authoritative determination is needed to guide public officers in the performance of their duties, and (3) the

circumstances are likely to recur in other cases.  Felzak, 226 Ill. 2d at 393, 876 N.E.2d at 658; In re J.T., 221 Ill. 2d 338, 350, 851 N.E.2d 1, 8 (2006).  The public-interest exception must be "narrowly construed and requires a clear showing of each criterion."  Felzak, 226 Ill.2d at 393, 876 N.E.2d at 658.

The second exception to the mootness doctrine, the capable-of-repetition exception, applies only if (1) the challenged action is of such short duration that it cannot be fully litigated prior to its cessation and (2) the same complaining party may reasonably be expected to be subject to the same action again.  Like the public-interest exception, the capable-of-repetition exception must be narrowly construed and requires a clear showing of each criterion.  J.T., 221 Ill. 2d at 350, 851 N.E.2d at 8.

In In re Alfred H.H., 379 Ill. App. 3d 1026, 1028, ___ N.E.2d ___, ___ (2008), this court recently discussed the mootness doctrine in mental-health cases, as follows:

> "For the last several years, this court has rather routinely recognized an exception to the mootness doctrine in cases involving involuntary mental-health admission and involuntary mental-health treatment.  However, given the supreme court's clear, consistent, and recent adherence to the established exceptions to the mootness doctrine without regard to the type of cases before it, we

conclude that Supreme Court of Illinois doc-
trine requires us to determine whether an
otherwise moot appeal comes within an estab-
lished exception to the mootness doctrine."

In this case, respondent argues that the trial court's involuntary-treatment order failed to comply with the Code (405 ILCS 5/2-107.1(a-5)(1) (West 2006)) because his criminal defense attorney was not notified of the petition. Given that (1) strict compliance with statutory procedures is required based on the important liberty interests involved in involuntary-treatment cases (In re Lisa G.C., 373 Ill. App. 3d 586, 590, 871 N.E.2d 794, 799 (2007)) and (2) our supreme court has stated that "the procedures courts must follow to authorize the involuntary medication of mental[-]health patients involve matters of 'sub-stantial public concern'" (In re Robert S., 213 Ill. 2d 30, 46, 820 N.E.2d 424, 434 (2004), quoting In re Mary Ann P., 202 Ill. 2d 393, 402, 781 N.E.2d 237, 243 (2002)), respondent's arguments regarding the involuntary-treatment order's compliance with the Code constitute questions of public importance. In addition, answers to respondent's arguments will provide an authoritative determination to guide public officers in the performance of their duties in mental-health cases. Finally, the circumstances in this case are likely to recur in other involuntary-treatment cases. Accordingly, we conclude that respondent clearly estab-lished the criteria necessary to satisfy the public-interest exception to the mootness doctrine. Because we so conclude, we

- 7 -

need not address whether respondent also established the criteria necessary to satisfy the capable-of-repetition exception to the mootness doctrine.

Second, we consider whether the issue is waived. Citing In re Splett, 143 Ill. 2d 225, 572 N.E.2d 883 (1991), the State contends that the respondent waived review of whether notice of the petition should have been served on his criminal defense attorney because he did not raise that issue in the trial court. In Splett, our supreme court held that proof of formal notice of the proceeding may be excused when circumstances demonstrate that actual notice is sufficient. Splett, 143 Ill. 2d at 231-32, 572 N.E.2d at 886. In finding that formal notice is not necessary if the respondent receives actual notice of the petition, our supreme court noted that reversal of an order granting a petition for involuntary commitment is not required if (1) the respondent and his attorney took part in the proceedings on the merits and never challenged a procedural defect to which an objection could and should have been immediately made; (2) the procedural defect could have been cured easily if a timely objection had been made; and (3) the procedural defect made no difference in the end result. Splett, 143 Ill. 2d at 230-31, 572 N.E.2d at 886.

In this case, the result of the proceedings could indeed affect the respondent's criminal case. See Robert S., 213 Ill. 2d at 57, 820 N.E.2d at 440. Moreover, waiver is a limitation on the parties and not the courts. "[A] reviewing court may

ignore waiver in order to achieve a just result." In re Janet S., 305 Ill. App. 3d 318, 320, 712 N.E.2d 422, 423-24 (1999). Thus, we choose to address the merits of this issue.

Section 2-107.1(a-5)(1) of the Code (405 ILCS 5/2-107.1(a-5)(1) (West 2006)) provides in part:

"The petitioner shall deliver a copy of the petition[] and notice of the time and place of the hearing[] to the respondent, his or her attorney, any known agent or attorney-in-fact, if any, and the guardian, if any, no later than [three] days prior to the date of the hearing."

In Robert S., the respondent was found unfit to stand trial on unknown charges. Robert S., 213 Ill. 2d at 32, 820 N.E.2d at 426. He was subsequently admitted to a mental-health facility and during his stay there, his treating psychiatrist petitioned to involuntarily administer psychotropic medication. Notice of the petition was never served on the respondent's criminal defense attorney. Following a hearing, the trial court granted the petition to involuntarily administer psychotropic medication.

On appeal, our supreme court considered whether pursuant to section 2-107.1(a-5)(1) of the Code, the respondent's criminal defense attorney was entitled to notice of the petition to administer psychotropic medication. The court determined that the respondent's criminal defense attorney was due such notice

- 9 -

because, at the very least, that attorney was the respondent's agent, and as such, the plain language of section 2-107.1(a-5)(1) required that notice be served on him or her. Robert S., 213 Ill. 2d at 57, 820 N.E.2d at 440. In reaching that conclusion, the court noted:

"Respondent came to be in a mental[-] health facility because he was found unfit to stand trial in a criminal proceeding. In that proceeding, he was represented by an attorney. All of the parties to this action were aware of that proceeding. Although the purpose of the instant proceeding was to determine whether psychotropic medication should be forced upon respondent for his own benefit and/or the safety of those around him, ultimately, there may be consequences pertinent to the pending criminal matter.

We note that the language concerning notification in section 2-107.1(a-5)(1) of the Code is very broad and general. It refers to notification of, inter alios, a respondent's 'attorney' and 'any known agent,' without qualification or limitation. We have previously construed this section to require notification of 'any other interested parties to the proceeding.' See In re C.E., 161 Ill.

- 10 -

2d [200, 226, 641 N.E.2d 345, 357 (1994)].
In the absence of any restrictive language in
the statute, we believe respondent's criminal
defense attorney qualifies as a party to whom
notice is due. In the very least, criminal
counsel was a 'known agent,' and thus should
have been given notice of this proceeding."
Robert S., 213 Ill. 2d at 56-57, 820 N.E.2d
at 440.

Here, respondent came to be in a mental-health facility because he was found unfit to stand trial in a criminal proceeding. In that proceeding, he was represented by an attorney. All of the parties to this action were aware of that proceeding. Section 2-107.1(a-5)(1) of the Code mandates that an agent for the respondent must be given notice of a petition seeking to involuntarily administer psychotropic medication, and our supreme court has determined that a respondent's criminal defense attorney falls into this category. Thus, the respondent's criminal defense attorney was entitled to notice of the petition.

Because we reverse the trial court's involuntary-treatment order, we do not address respondent's remaining argument.

For the reasons stated, we reverse the trial court's judgment.

Reversed.

KNECHT and STEIGMANN, JJ., concur.