# Illinois Official Reports

## Appellate Court

---

### *In re Estate of Hughes*, 2020 IL App (5th) 190390

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF RYAN HUGHES, a Disabled Adult (Michael Hughes, Petitioner-Appellant, v. Diane Hughes, Respondent-Appellee). |
| District & No. | Fifth District<br>No. 5-19-0390 |
| Filed | July 22, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Williamson County, No. 18-P-23; the Hon. John Sanders, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Gregg A. Garofalo and Colleen E. McNulty, of Garofalo Law Group, of Chicago, for appellant.<br><br>Ronald E. Osman, of Ronald E. Osman & Associates, Ltd., of Marion, for appellee. |
| Panel | JUSTICE BOIE delivered the judgment of the court, with opinion.<br>Presiding Justice Welch and Justice Overstreet concurred in the judgment and opinion. |

**OPINION**

¶ 1        Following a slip and fall accident, Ryan Hughes became a disabled person. The circuit court appointed the respondent, Diane Hughes, to serve as the guardian of Ryan's person and estate. After Ryan died, the petitioner, Michael Hughes, filed a petition seeking to hold Diane in criminal contempt for violating one of the circuit court's orders that concerned Diane's duties as Ryan's guardian. Michael alleged that Diane's violation of the order was willful and resulted in Ryan's death. The circuit court dismissed Michael's petition holding that, because Ryan had died, the guardianship case had terminated and, therefore, it lacked subject matter jurisdiction to adjudicate Michael's claim. For the following reasons, we reverse and remand for further proceedings on Michael's petition.

¶ 2                                    I. BACKGROUND

¶ 3        Diane is Ryan's mother and Michael is Ryan's oldest son. On December 29, 2017, Ryan had an accident at his home when he slipped and fell on some stairs causing him to suffer a traumatic brain injury. Ryan was admitted to a hospital in Cape Girardeau, Missouri, in an unconscious state and was placed on a ventilator. On January 24, 2018, Diane apparently executed do-not-resuscitate orders (DNR orders) on behalf of Ryan. Although not significant to this appeal, we note that neither a copy of these orders nor a description of their terms is included in the record on appeal. Ryan eventually began breathing on his own but had a long rehabilitation period ahead of him.

¶ 4        On February 1, 2018, Diane filed a petition requesting the circuit court to appoint her as Ryan's temporary and plenary guardian. Diane alleged that she had already made health care decisions for Ryan since his injury and that she was requesting the guardianship so she could legally make decisions for Ryan, including authority for residential placement of Ryan in an appropriate treatment/rehabilitation facility. The circuit court appointed Diane as Ryan's temporary guardian.

¶ 5        A dispute arose between Michael and Diane concerning which one of them should serve as Ryan's guardian. On February 13, 2018, Michael filed a motion to vacate the order appointing Diane as Ryan's temporary guardian. He also filed a petition requesting the court to appoint him as the plenary guardian over Ryan's person and estate. On March 19, 2018, Michael filed an emergency petition seeking a withdrawal of the DNR orders Diane executed on January 24, 2018. Michael alleged that the DNR orders were contrary to Ryan's wishes and that Ryan would want life-sustaining treatment.

¶ 6        On March 20, 2018, the parties appeared in court and reached an agreement with respect to, among other things, the DNR orders. The circuit court entered an agreed order that directed Diane to "immediately contact any and all medical institutions or medical providers *** to withdraw and/or terminate [t]he DNR orders that are currently in place." The agreed order also prohibited Diane "from executing any further life-sustaining treatment orders without further order of this Court."

¶ 7        On May 8, 2018, the parties appeared in court and reached an agreement that Diane would serve as the plenary guardian over Ryan's person and estate. The circuit court entered an agreed order that granted Diane authority over Ryan's placement for treatment and recovery. The order expressly stated that Diane "shall not authorize to forgo 'life-sustaining treatment' as

defined in the Illinois Health Care Surrogate Act [(755 ILCS 40/10 (West 2018))] without petitioning this Court for approval and without prior notice to Michael Hughes."

¶ 8    By December 21, 2018, Ryan was in rehabilitation at a nursing home facility in Herrin, Illinois. During the early morning hours on Friday, December 21, 2018, Ryan suffered cardiac arrest. He was rushed to the emergency room where the hospital staff administered various procedures and medications to resuscitate Ryan beginning around 3:40 a.m. According to the hospital records, at some point, Diane stated to the hospital staff that she did not believe that Ryan wanted "this much resuscitation and invasive procedures done." Instead, she believed that Ryan would "have preferred to die in a more peaceful manner." According to the treating physician's notes, when Ryan became pulseless a third time during resuscitation efforts, the treating physician asked Diane "how aggressively does she think the patient would want us to resuscitate him." Diane informed the doctor that she thought Ryan would want them to terminate resuscitation efforts. The doctor wrote that he "clarified this decision with [Diane]" and then informed the nursing staff to "discontinue norepinephrine and lidocaine infusions." The nursing staff also terminally extubated Ryan and placed him on a non-rebreather facemask. The emergency room records show that, around 5:17 a.m., the doctor noted that Diane "requests to withdraw resuscitative efforts" and that Ryan was extubated at 5:20 a.m. at Diane's request. Ryan died one minute later.

¶ 9    Following Ryan's death, Diane filed a final guardian report and a petition for discharge of the guardianship. Michael filed a petition for rule to show cause and an amended petition for rule to show cause, requesting that the circuit court order Diane to show cause why she should not be held in contempt of court for failing to abide by the circuit court's May 8, 2018, order. Michael ultimately abandoned these petitions, and instead, on March 12, 2019, he filed a petition seeking an adjudication of criminal contempt. Specifically, he requested an order holding Diane in indirect criminal contempt for violating that portion of the May 8, 2018, order that prohibited her from denying Ryan any life-sustaining treatment without first petitioning the circuit court for approval and without prior notice to Michael. Michael alleged that Diane knowingly and willfully violated the order by ordering the physicians at the hospital to withdraw resuscitative efforts. Michael alleged that Diane did not obtain a court order to remove life-sustaining efforts and did not notify Michel prior to her actions and was guilty of indirect criminal contempt due to her actions.

¶ 10   Diane moved to strike Michael's petition. Diane argued that the circuit court lost subject matter jurisdiction in this case when Ryan died. She argued that, upon Ryan's death, her role was only to preserve the guardianship estate until an executor or administrator of the estate was appointed. She maintained that, because she was powerless to pay any claims against the guardianship estate, the circuit court was likewise powerless to adjudicate any claims and had no jurisdiction to issue any order stemming from her alleged wrongdoing as the guardian. She also argued that Michael failed to allege sufficient facts to establish that her actions were "willful" and, therefore, Michael failed to allege a cause of action for criminal contempt.

¶ 11   On May 21, 2019, the circuit court conducted a hearing on the pending motions. Following the hearing, the circuit court took the matter under advisement. On May 25, 2019, the court entered an order granting Diane's motion to strike Michael's petition. The circuit court concluded that it lacked subject matter jurisdiction to render a decision on Michael's petition, citing *In re Estate of Gebis*, 186 Ill. 2d 188 (1999), as "controlling" authority on this issue. The circuit court concluded that, upon Ryan's death, the guardianship terminated and that, with a

few exceptions that did not apply, it no longer had jurisdiction "to supervise the administration of the guardianship estate." The circuit court concluded, therefore, that it lacked jurisdiction to render a decision on Michael's petition and dismissed the petition for lack of subject matter jurisdiction. The circuit court denied Michael's motion for a rehearing, and Michael now appeals the circuit court's dismissal of his petition.

¶ 12                                        II. ANALYSIS

¶ 13     The sole issue before us in this appeal is whether the circuit court has subject matter jurisdiction over Michael's request to hold Diane in criminal contempt for violating the May 8, 2018, order. We review questions concerning the circuit court's subject matter jurisdiction under the *de novo* standard of review. *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 25.

¶ 14     Subject matter jurisdiction refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). With the exception of the circuit court's power to review administrative actions, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution. Ill. Const. 1970, art. VI, § 9; *Belleville Toyota*, 199 Ill. 2d at 334. Under section 9 of article VI, the circuit court's subject matter jurisdiction extends to "*all* justiciable matters." (Emphasis added.) Ill. Const. 1970, art. VI, § 9.

¶ 15     In the present case, in concluding that it lacked subject matter jurisdiction, the circuit court relied exclusively on the Illinois Supreme Court's decision in *Gebis*. However, the circuit court's reliance on *Gebis* was misplaced because the supreme court has overruled the analysis in that decision. Since *Gebis*, the supreme court has fundamentally changed its view of the circuit court's subject matter jurisdiction. The supreme court set out this change in *Belleville Toyota*, 199 Ill. 2d at 337. Accordingly, in the present case, the circuit court's subject matter jurisdiction must be analyzed in light of the holding of *Belleville Toyota*, and its progeny, not the holding in *Gebis*. Applying this proper jurisdictional analysis it is clear that the circuit court has subject matter jurisdiction to adjudicate Michael's petition.

¶ 16                    A. Subject Matter Jurisdiction Prior to *Belleville Toyota*

¶ 17     To understand the evolution of the supreme court's subject matter jurisdiction jurisprudence, we first consider the framework of the supreme court's analysis in *Gebis*, which is no longer valid. Instead of subject matter jurisdiction over *all* justiciable matters as provided in article VI, section 9, of our state constitution, the *Gebis* court held that, with respect to justiciable matters that are defined by the legislature, the circuit court had only "limited jurisdiction."

¶ 18     In *Gebis*, a brother and sister served as coguardians of their mother who was a disabled adult. *Gebis*, 186 Ill. 2d at 191. After the mother died, the brother filed a claim against the guardianship estate seeking compensation for caring for the mother during the mother's final years of her life. *Id.* The sister moved to dismiss the brother's claim on several grounds including due process and other constitutional grounds. *Id.* at 191-92. The circuit court granted the sister's constitutional arguments and dismissed the brother's claim. *Id.* The brother appealed directly to the supreme court pursuant to Illinois Supreme Court Rule 302(a) (eff. Feb. 1, 1984). *Gebis*, 186 Ill. 2d at 191. Prior to analyzing the constitutional issues, the *Gebis*

court noted that the circuit court did not analyze whether it had subject matter jurisdiction to hear the merits of the brother's petition after the ward's death. The supreme court raised this *sua sponte*. *Id.* at 192.

¶ 19        The court then turned to the language of the Probate Act of 1975 (Probate Act), noting that, under section 24-19 of the Probate Act (755 ILCS 5/24-19 (West 1996)), the guardianship over the mother terminated when she died. *Gebis*, 186 Ill. 2d at 193. At that point, under the language of the Probate Act, the guardian's duties were limited to preserving the estate until an executor or administrator was appointed. *Id.* The guardian had no power to pay any claims filed against the guardianship estate. *Id.*

¶ 20        Based on this statutory language, the *Gebis* court held that the brother's claim could not be filed in the guardianship case but should be filed against the mother's probate estate once an executor or administrator was appointed and the estate was opened. *Id.* at 194-95. Because the Probate Act did not provide for the brother filing his claim against the guardianship estate, the *Gebis* court held that it had "no choice" but conclude that the circuit court lacked jurisdiction to adjudicate the brother's claim until the mother's "will is admitted to probate or letters of administration issue." *Id.* at 195-96.

¶ 21        In its analysis, the *Gebis* court recognized that the legislature has no power to limit a circuit court's original jurisdiction to hear a "justiciable matter." *Id.* at 192. However, the *Gebis* court also noted that the legislature had the power to "create a justiciable matter by creating rights or duties that have no counterpart in common law or equity." *Id.* The court held that, in these instances, because the justiciable matter itself is defined by the legislature, the legislature may define the justiciable matter in such a way that limits or precludes the circuit court's authority. *Id.* at 192-93. "When the circuit court's power to act is controlled by statute, the circuit court is governed by the rules of *limited jurisdiction* and must proceed within the statute's strictures." (Emphasis added.) *Id.* at 193. The *Gebis* court concluded, "[a]ny action taken by the circuit court that exceeds its [limited] jurisdiction is void and may be attacked at any time." *Id.* The *Gebis* court concluded that the brother's petition exceeded the limited jurisdiction of the circuit court because the legislature, in drafting the language of the Probate Act, precluded the filing of such a petition against a guardianship estate after the ward's death. *Id.* at 195-96.

¶ 22                      B. Subject Matter Jurisdiction After *Belleville Toyota*

¶ 23        After *Gebis*, the Illinois Supreme Court issued its decision in *Belleville Toyota*, which overruled the "limited jurisdiction" analysis set out in *Gebis* and in other decisions. The *Belleville Toyota* court emphasized that, except in the context of administrative review, which is conferred by statute, a circuit court's subject matter jurisdiction over justiciable matters is conferred only by our state's constitution, not the legislature. *Belleville Toyota*, 199 Ill. 2d at 334-35. Under the constitution, the circuit court possesses subject matter jurisdiction as a matter of law over all justiciable matters brought before it. *Id.* at 334. The *Belleville Toyota* court defined "justiciable matter" as "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Id.* at 335.

¶ 24        Contrary to the holding in *Gebis*, the *Belleville Toyota* court expressly stated that the legislature's creation of a new justiciable matter that has no counterpart at common law or in equity "*does not mean that the legislature thereby confers jurisdiction on the circuit court.*" (Emphasis added.) *Id.* The *Belleville Toyota* court expressly rejected cases that held "that the

- 5 -

legislature, in defining a justiciable matter, may impose 'conditions precedent' to the court's exercise of jurisdiction that cannot be waived." *Id.*

¶ 25 Since *Belleville Toyota*, the supreme court has further explained as follows: "To invoke a circuit court's subject matter jurisdiction, a petition or complaint need only 'alleg[e] the existence of a justiciable matter.' " *In re Luis R.*, 239 Ill. 2d 295, 301 (2010) (quoting *In re M.W.*, 232 Ill. 2d 408, 426 (2009)). "Indeed, even a defectively stated claim is sufficient to invoke the court's subject matter jurisdiction, as '[s]ubject matter jurisdiction does not depend upon the legal sufficiency of the pleadings.' " *Id.* (quoting *Belleville Toyota*, 199 Ill. 2d at 340). "In other words, the *only* consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present." (Emphasis in original.) *Id.*

¶ 26 In *Belleville Toyota*, for example, the issue was whether compliance with a statutory limitations period was a jurisdictional prerequisite to asserting a claim under the Motor Vehicle Franchise Act (815 ILCS 710/1 *et seq.* (West 2000)). *Belleville Toyota*, 199 Ill. 2d at 333. The defendants argued that, because the plaintiff's cause of action was purely statutory in origin, the circuit court's exercise of subject matter jurisdiction was conditioned upon the plaintiff's compliance with all statutory conditions, including the limitations period. The supreme court rejected this argument, explaining that a circuit court's subject matter jurisdiction was defined not by the authorizing statute but by the state constitution and therefore the only prerequisite to the court's exercise of that jurisdiction is that the asserted claim that was "justiciable." *Id.* at 334-35. In addition, the court stated that, so long as the plaintiff's complaint alleges the existence of a justiciable matter, even if it does so defectively, the trial court possesses the jurisdiction to adjudicate that complaint, as "[s]ubject matter jurisdiction does not depend upon the legal sufficiency of the pleadings." *Id.* at 340. Therefore, the supreme court concluded, regardless of whether or not the plaintiff was in actual compliance with the statutory limitations period, the circuit court, nonetheless, had subject matter jurisdiction "to hear and determine plaintiff's claim because it was among the general class of cases—those presenting a claim under the [Motor Vehicle Franchise] Act, a justiciable matter—to which the court's constitutionally granted original jurisdiction extends." *Id.*

¶ 27 Likewise, in *Luis R.*, the State filed a petition alleging that the respondent was a delinquent minor. *Luis R.*, 239 Ill. 2d at 297. The respondent moved to dismiss the petition, arguing that, because he had turned 21 years old, the circuit court was " 'without jurisdiction over [his] person.' " *Id.* The circuit court granted the respondent's motion to dismiss, ruling that there was " 'no jurisdiction under the Juvenile Court Act [of 1987 (705 ILCS 405/1-1 *et seq.* (West 2010))] for *this proceeding*.' " (Emphasis in original.) *Id.* at 300. The supreme court, however, reversed, holding that the State's petition stated a justiciable matter and, therefore, the circuit court's dismissal of the case based on the lack of subject matter jurisdiction was "in error." *Id.* at 303.

¶ 28 In *Luis R.*, the supreme court recognized that there may have been a fatal pleading defect in the petition but held that "the trial court possessed the requisite subject matter jurisdiction to adjudicate that petition." *Id.* The *Luis R.* court explained that the State's petition asserted a claim under the Juvenile Court Act of 1987 and, therefore, alleged a justiciable matter to which the circuit court's constitutionally granted original jurisdiction extends. *Id.* "On its face, then, the State's petition allege[d] the existence of a justiciable matter, which is the only prerequisite to the trial court's exercise of subject matter jurisdiction in this case." *Id.* at 302-03. The

supreme court emphasized, "we wish to make this *very clear*, subject matter jurisdiction has nothing to do with the legal sufficiency of the asserted claim." (Emphasis added.) *Id.* at 303. Instead, "the *only* consideration is whether the asserted claim, legally sufficient or not, was filed in the proper tribunal." (Emphasis in original.) *Id.*

¶ 29    To underscore this concept, the court elaborated as follows:

"Respondent's motion to dismiss did not assert that Illinois courts lack the inherent authority to adjudicate delinquency petitions, or that the State's petition should have been filed in a different tribunal, such as the Illinois Human Rights Commission or the Court of Claims. Such a motion would have been patently frivolous, as the circuit court's authority to adjudicate delinquency petitions is beyond dispute. Rather, respondent's motion asserted that this particular delinquency petition is legally defective in that respondent falls outside the class of persons against whom such petitions may lawfully be filed. While respondent may very well be correct, the fact remains that someone has to decide that question in the first instance. And the tribunal with the authority to make that decision is the tribunal with subject matter jurisdiction. Here, that tribunal is the circuit court." *Id.*

¶ 30    In the present case, the circuit court unquestionably has subject matter jurisdiction over Michael's petition. Michael's petition requested the circuit court to hold Diane in indirect criminal contempt for failing to abide by that portion of the May 8, 2018, order that prohibited her from denying Ryan any life-sustaining treatment without first petitioning the circuit court for approval and without prior notice to Michael. Michael alleged that Diane knowingly and willfully violated the circuit court's order resulting in Ryan's death.

¶ 31    To determine whether the circuit court had subject matter jurisdiction over this petition, we need *only* to determine whether Michael's petition alleges a justiciable matter. It plainly does. Michael's claim of criminal contempt presents "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota*, 199 Ill. 2d at 335. Therefore, at this point, our analysis of the circuit court's subject matter jurisdiction is complete. The circuit court has subject matter jurisdiction. The termination of the guardianship in this particular case has no bearing on the circuit court's subject matter jurisdiction over Michael's petition because Michael's petition is among the "general class" of petitions, *i.e.*, petitions for the adjudication of indirect criminal contempt, "to which the court's constitutionally granted original jurisdiction extends." *Id.* at 340.

¶ 32    As illustrated by the supreme court in *Luis R.*, in the present case, if Diane had alleged in her motion to dismiss that the circuit court lacked the inherent authority to adjudicate criminal contempt findings or that Michael's petition should have been filed in a different tribunal, such as the Illinois Human Rights Commission or the Court of Claims, the motion would have been patently frivolous. See *Luis R.*, 239 Ill. 2d at 303. That the circuit court is the appropriate tribunal to adjudicate findings of contempt for a violation of its own orders is beyond dispute. *People v. Simac*, 161 Ill. 2d 297, 305 (1994) ("It is well established law that all courts have the inherent power to punish contempt; such power is essential to the maintenance of their authority and the administration of judicial powers."). Claims of indirect criminal contempt are unquestionably within the general class of justiciable matters that the circuit court has the inherent power to hear and determine. Accordingly, in the present case, subject matter

jurisdiction is present, and we must reverse the circuit court's dismissal order holding that subject matter jurisdiction is lacking.

¶ 33 Parenthetically, we also note that, even if we applied the *Gebis* court's "limited jurisdiction" analysis, the circuit court in this case would still have subject matter jurisdiction over Michael's petition. Criminal contempt[1] is punitive in nature and is instituted to punish a contemnor for past contumacious conduct. *People v. Warren*, 173 Ill. 2d 348, 368 (1996). "In contrast to the coercive purpose of civil contempt sanctions, the reasons for imposing punishment for criminal contempt are much the same as the rationale for punishing other types of misdemeanor criminal conduct—retribution, deterrence, and vindication of the norms of socially acceptable conduct." *In re Marriage of Betts*, 200 Ill. App. 3d 26, 44 (1990).

¶ 34 The circuit court's power to adjudicate criminal contempt allegations is not only inherent power but is also power that is essential to the maintenance of its authority and the administration of judicial powers. *People v. Loughran*, 2 Ill. 2d 258, 262 (1954). Importantly, the circuit court's contempt power is not derived from the Probate Act or any other legislative enactment. Therefore, it is not a legislatively established "justiciable matter" like the claim at issue in *Gebis*. In addition, the adjudication of Michael's claim of indirect criminal contempt would not concern the guardian's duties following the ward's death, and it would not be a sanction to *compel or coerce* the guardian's *future* actions. Instead, it would be a proceeding to determine whether the circuit court should *punish* the guardian for *past* conduct that allegedly violated the circuit court's order. Accordingly, even if the circuit court had only "limited jurisdiction" as set out in *Gebis*, nothing within the Probate Act would interfere with the circuit court's power to adjudicate a claim of indirect criminal contempt or impose punishment upon a finding of criminal contempt.

¶ 35 Finally, in her brief, Diane argues that Michael failed to sufficiently allege that she willfully violated the circuit court's order and argues that she has immunity from being held in criminal contempt. These arguments are not relevant to the determination of the circuit court's subject matter jurisdiction. Therefore, we offer no opinion on these issues. In addressing these issues, it is sufficient to quote the supreme court in *Luis R.*, "[S]omeone has to decide [these] question[s] in the first instance. And the tribunal with the authority to [decide these questions] is the tribunal with subject matter jurisdiction. Here, that tribunal is the circuit court." *Luis R.*, 239 Ill. 2d at 303.

¶ 36                                      III. CONCLUSION
¶ 37 For the foregoing reasons, we reverse judgment of the circuit court and remand to the circuit court for further proceedings consistent with this decision.

¶ 38 Reversed and remanded.

---

[1]"Criminal" contempt is to be distinguished from "civil" contempt, which is not to punish but is a sanction or penalty designed to compel future compliance with a court order. *Felzak v. Hruby*, 226 Ill. 2d 382, 391 (2007). Unlike criminal contempt, civil contempt involves a coercive sanction rather than a punishment for past contumacious conduct. *Id.*